UNITED STATES STEEL CORPORATION, a corporation, Plaintiff-Appellee,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant-Appellant.

No. 72–1698.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1973.

Decided Jan. 3, 1975.

John M. Moelmann, D. Kendall Griffith, Chicago, Ill., for defendant-appellant.

Harlan L. Hackbert and George W. Gessler, Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, STEVENS and SPRECHER, Circuit Judges.

FAIRCHILD, Circuit Judge.

Plaintiff United States Steel Corporation (Steel) brought suit for declaratory judgment claiming insurance coverage under policies issued by the defendant, Hartford Accident and Indemnity Company (Hartford) and seeking damages for Hartford's breach of its duty to defend Steel in underlying state court actions. Three separate actions were consolidated and the district court granted summary judgment for Steel. Hartford appeals from the district court's declaration that Hartford's Comprehensive General-Automobile Liability Policy provided coverage for the claims brought against Steel in the underlying actions; that Hartford had breached its duty to defend in those actions, and that Hartford was obligated to pay the judgment secured; and from the award as damages of the amounts of Steel's costs and expenses in defending the underlying actions. Jurisdiction is founded on diversity of citizenship and Illinois law controls substantive questions.

## I. COVERAGE AND THE DUTY TO DEFEND

During the period relevant to this action, Hartford provided the primary insurance coverage for the owners, architects and all of the contractors and subcontractors for the construction of the John Hancock Building in Chicago, Illinois. Tishman Construction Company (Tishman) was the general contractor for the project and Steel, through its American Bridge Division, one of the subcontractors. The contract between Tishman and Steel contained an agreement that Steel would indemnify and hold harmless Tishman from any claim arising out of the work performed by Steel; and would pay any claims for bodily injury caused by Steel's performance of the work; including all claims arising under the Illinois Structural Work Act, Ill.Rev.Stats. Ch. 48, §§ 60–69. In addition, as a result of the negotiations between the parties, Steel accepted all the coverage provided under Hartford's "wrap-up" program, with the exception of coverage for liability under the Illinois Workmen's Compensation Law.

Included in the coverage accepted by Steel was that provided by the Comprehensive General-Automobile Liability Policy. Coverage B obligated Hartford to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . sustained by any person and caused by accident." Exclusion (h) provides that the policy does not apply "under Coverage B, except with respect to liability assumed by the insured under a contract as defined herein, to bodily injury to . . . any employee of the insured arising out of and in the course of his employment by the insured." The definition of "contract" in Condition 3 of the policy would not include Steel's contract with Tishman, but it is conceded that this is not controlling. Coverage Y under a Contractual Liability Coverage Endorsement obligated Hartford "to pay on behalf of the insured all sums which the insured, by reason of the liability assumed by him under any written contract designated in the schedule herein, shall become legally obligated to pay as damages because of bodily injury . . ., sustained by any person and caused by accident." The schedule designated "that part of all written contracts (other than as defined in condition 3 of the policy) in which any named insured assumes the liability of others."

During the course of construction of the John Hancock project, Cecil Gadd, an employee of Steel, was injured, and he sued the owners, architects and Tishman, *inter alios,* alleging violations of the Structural Work Act and common law negligence.[1] Pursuant to the terms of

1. The parties here have stipulated that the facts and substantive issues of the *Gadd* action control the disposition of the other two cases consolidated in the judgment appealed from.

the Comprehensive General-Automobile Liability Policy, Hartford accepted the defense of that action and retained attorneys to represent the defendants. The defendants in turn filed a three-count third-party action for indemnity against Steel based, respectively, on theories of (1) "active-passive" liability to indemnify, (2) express indemnity, and (3) implied indemnity. Steel tendered the defense of the third-party complaint to Hartford, seeking coverage under the "wrap-up" policies. Hartford refused to defend or to provide coverage under Counts I and III. Defendants in the state court action, represented by attorneys furnished by Hartford, voluntarily dismissed Count II (express indemnity) before any answer by Steel, but after its defense was tendered to Hartford.

■ There could be no question of Hartford's duty to defend Steel in the state court action if the third-party complaint had remained in its original three-count form. Where the pleadings disclose potential coverage under a liability insurance policy, the insurer must defend. Domas v. Fidelity & Casualty Co. of New York, 113 Ill.App.2d 22, 26, 251 N.E.2d 284 (1969); Sims v. Illinois National Casualty, 43 Ill.App.2d 184, 193 N.E.2d 123 (1963). See generally, Comment, "Insurer's Duty to Defend Under a Liability Insurance Policy," 114 U.Pa. L.Rev. 734 (1966); Annotation, 50 A.L. R.2d 458.

Count II was voluntarily dismissed, and the state court action proceeded to a determination of Steel's liability without reliance on Steel's promise to indemnify, though known to all parties, including Hartford at the time it issued its policies. Hartford's agreement here rests in part on the proposition that because Steel's liability was so determined, such liability was outside the coverage of the policy.

Putting aside for the moment the effect of Hartford's involvement in the voluntary dismissal of Count II, which claimed Steel's liability on the ground of Steel's express promise, the initial question is whether the district court erred in holding that Steel's liability to indemnify. Tishman from the *Gadd* claim was covered because indemnification was expressly promised in the written contract.

No one has pointed out that any facts determined in state court, on which that judgment was grounded, were inconsistent in any way with the existence of Steel's liability upon its promise to indemnify Tishman. The fact that Steel may have been required to assume Tishman's liability to one of Steel's employees under another legal theory does not eliminate the fact that, by contract, Steel expressly agreed to assume the obligation.

■ And where the facts are such that an insured's liability exists on one theory as well as another and one of them brings the liability within coverage, we think the insured may avail himself of the insurance protection.[2] To hold otherwise would place upon the insured the burden of demonstrating where liable on two theories, which theory was controlling for purposes of insurance coverage.

We agree with the following reasoning of the district court:

"Applying those clauses to the facts of the case at bar, it is clear that U. S. Steel, by its contractual agreement with Tishman, assumed Tishman's liability for all 'claims and judgments arising or alleged to arise under the Illinois Structural Work Law,' and thus assumed Tishman's liability for any sums which it became obligated to pay resulting from the Cecil Gadd claim. Accordingly, it follows, from the face of the General Liability policy, that since Hartford insured U. S. Steel with regard to such a contract of indemnity, there can be no doubt that

---

**2.** See Simmons v. Fidelity and Casualty Co., 511 F.2d 87 decided today. Steel does not take the position taken by Simmons in that case. If Simmons had prevailed in its argument that under Illinois law, liability of a contractor to indemnify an owner based on the active-passive fault criterion, was liability assumed by the contractor under the contract, the same argument would clinch Steel's recovery here.

Hartford owed U. S. Steel coverage for that assumed liability.

\*  \*  \*  \*  \*  \*  \*

"However, it is Hartford's position that because the express indemnity count was voluntarily dismissed from Tishman's third-party action against U. S. Steel, and since the judgment on U. S. Steel's liability to Tishman was based on the other theories, Hartford was not obligated to provide coverage under the express provisions of the General Liability policy. I cannot agree.

"The term 'liability' as utilized in the relevant portion of the policy cannot be limited to simply a judgment based upon a certain theory. Rather, because of the well-established doctrine that insurance contracts should be broadly construed in favor of the insured, I. L. P., Insurance, § 149, and the numerous cases cited therein, the term 'liability' must, at least, be namely that if Tishman becomes liable under the provisions of the Illinois Structural Work Act because of an accident involving a U. S. Steel employee, then U. S. Steel must assume that liability, and, therefore, Hartford, pursuant to the terms of its policy, must indemnify U. S. Steel for that liability, regardless of the theory on which it is based."

## II.  COLLATERAL ESTOPPEL

■ Hartford argues that Steel is collaterally estopped from litigating in this action the question whether its liability to indemnify Tishman was a liability assumed by it under a written contract. The argument is based on the fact that at the close of the evidence in the state court trial, and again after verdict, Steel moved to strike Counts I and III on the ground that the express agreement between the parties precluded any theory of implied indemnity. The court denied the motions.

In the view we take of the matter, the adjudication of Steel's liability to indemnify Tishman on the active-passive theory did not rest on the determination of any fact which was inconsistent with Steel's contractual liability to indemnify Tishman. Understandably, Steel would have preferred to be held liable, if at all, on the agreement to indemnify, but the state court's decision that it was liable as an active delinquent did not foreclose the existence of contractual liability as well.

## III.  HARTFORD'S CONFLICT OF INTEREST

■ The district court pointed out that when Tishman filed its third-party action against U. S. Steel on the basis of both express and implied liability, "U. S. Steel became *potentially* liable under its indemnity agreement, and therefore, when U. S. Steel requested that Hartford afford it a defense, it was Hartford's obligation under the policy to afford it.

"However, rather than to fulfill its obligation, Hartford, which insured both Tishman and U. S. Steel, evidently saw a way in which it could limit the amount that it would be required to pay by shifting the loss over to U. S. Steel. Accordingly, the Hartford attorneys representing Tishman voluntarily caused the dismissal of the express indemnity count under which Tishman clearly would have prevailed and on which U. S. Steel, and, therefore, Hartford, were clearly liable. The suit then proceeded only on the implied liability theories on which Hartford claimed that it owed no coverage to U. S. Steel.

"Such a course of action was quite clearly not in Tishman's best interest, since it assumed a less positive legal stance in the third-party action, or in the best interest of U. S. Steel, which would then be obligated to pay the first $25,000 of Tishman's claim out of its own pocket.

\*  \*  \*  \*  \*  \*  \*

" . . . Hartford attempted to shift the entire burden of the *Gadd* suit onto U. S. Steel by managing the state

court suit so as to allow Tishman to prevail on the only grounds which would eliminate its own liability under the plain coverage of the General Liability policy.

"The withdrawal of Count II of the complaint originally filed against U. S. Steel was a transparent attempt to effect this result.

"Defendant Hartford should not be permitted to avoid its policy obligations by manipulating the pleadings in a lawsuit, which it controlled, for its own benefit."

If, contrary to our conclusions already expressed, the theory upon which the state court adjudicated the liability of Steel to Tishman (duty to indemnify based on the active-passive criterion, rather than duty under express promise to indemnify) governed the question of insurance coverage, with the result there was none, we agree that Hartford did not have the right to take advantage of its control of the case as Tishman's insurer to choose the theory of the state court litigation and thus excuse itself from defending and protecting Steel. Hartford owed each of its insureds a duty of fair dealing. Whether the relationship be labeled fiduciary or not, the insurer is bound not to put its own interest ahead of the protection it has promised its insureds. See Bailey v. Prudence Mutual Casualty Company, 429 F.2d 1388, 1390 (7th Cir. 1970). *Cf.* Allstate Insurance Company v. Keller, 17 Ill. App.2d 44, 149 N.E.2d 482, 486 (1958).

The judgment appealed from is affirmed.