OPINION OF THE COURT
Stephen Smyk, J.
The William E. Bouley Co., Inc. (hereinafter referred to as Bouley), as the construction contractor, and the City of Binghamton (hereinafter referred to as the City), as the owner, entered into a contract for the construction of the Rock Bottom Dam project. Plaintiff Gary R. Covert, an employee of Bouley, was injured during the course of construction and commenced the above-entitled action against the City alleging violations of the Labor Law. The City, in turn, asserted a third-party claim against Bouley for common-law indemnification based upon the negligence of Bouley.
Bouley now moves for summary judgment dismissing the City’s third-party complaint on the ground that, as a matter of law, the city cannot maintain an action based *1076 upon a common-law right to indemnification because Bouley contractually agreed to fully indemnify the City for any liability for personal injuries resulting from any work under the construction contract. Bouley contends that this broad contractual indemnification liability supersedes any common-law liability and constitutes a “preindemnification” of the City when combined with the liability insurance coverage procured by Bouley for the City.
The construction contract between Bouley and the City contained several clauses by which Bouley agreed to be held responsible for all claims for personal injuries “occurring on account of the work” under the contract. In clause G-7.05, Bouley assumed sole responsibility and liability for any work-related injuries, whether or not they were the result of Bouley’s negligence. This clause also states that this assumption of liability was for the sole benefit of the City. This clause provided:
“G-7.05. contractor’s responsibility and liability for INJURIES TO PERSONS OR DAMAGE TO PROPERTY
“The Contractor shall be solely responsible and liable for the safety and protection of property including, but not limited to, the premises, its appurtenances and equipment and for safety and protection of all persons including, but not limited to, the employees of the Owner, Engineer, Contractor, or subcontractors. The Contractor shall be solely responsible for all physical injuries, including death, to any such persons and for all damage to any such property occurring on account of the work under this Contract, whether or not due to the negligence, fault, or default of the Contractor, his officers, employees, or agents, or of a subcontractor, his officers, employees, or agents.
“The liability of the Contractor under this Contract shall be absolute and shall not be dependent upon any question of negligence on his part or on the part of his officers, agents, servants, or employees. Neither the approval by the Engineer of the methods of doing the work, nor the failure of the Engineer to call attention to improper or inadequate methods or to require a change in methods, nor the neglect of the Engineer to direct the Contractor to take any particular precautions or to refrain from doing any particular thing shall excuse the Contractor from his obli *1077 gations hereunder in case of any such injury to person or damage to property.
“The provisions of this paragraph are intended for the sole benefit and protection of the Owner and shall not create any cause of action in favor of any person, corporation or entity, other than the Owner.”
In clause G-7.06, Bouley explicitly agreed to defend and indemnify the City against all liability for work-related injuries regardless of which party’s negligence caused the injury. Clause G-7.06, in pertinent part, provided:
“G-7.06. contractor’s duty of indemnification
“The Contractor shall fully protect, defend, indemnify, and save harmless the Owner and the Engineer, their officers and agents, against all liability, judgments, costs, damages and expenses upon any claims for injuries to, or death of, any persons or damage to any property occurring on account of the work hereunder, whether such damages or injuries to be attributable to the negligence of the Contractor, his officers, employees, agents, the Owner, Engineer, or others, provided, however, that this clause shall not be deemed to provide indemnity against the sole negligence of the Engineer.”
The contractual liability and the contractual indemnification assumed by Bouley under these clauses are clearly broader in scope than either Bouley’s common-law liability for its own negligent acts or its common-law duty to indemnify another party who has been held vicariously liable for Bouley’s negligent acts.
In addition to this broad contractual liability, Bouley also agreed to provide insurance coverage for itself and for the City to assure that Bouley would fulfill its responsibilities under these clauses. In clause G-12.01, Bouley agreed to procure comprehensive general liability insurance that included coverage for Bouley for liability assumed under the contract (Contractual Liability Insurance). Bouley also agreed to procure owners protective liability insurance and contractual liability insurance with the City as the named insured.
Clause G-12.01, in pertinent part, provided:
*1078 “The Contractor shall procure (in addition to the coverage required in other sections of this Contract):
“1. Comprehensive general liability insurance providing coverage for the Contractor for legal liability and customarily covered expenses for bodily injury and property damage with respect to the work under his Contract, including but not limited to liability for bodily injury and property damage (a) arising out of operations performed for the Contractor by independent contractors or arising out of acts or omissions of the Contractor in connection with his general supervision of such operations (Contractors’ Protective Liability Insurance), (b) occurring after operations have been completed or abandoned (Completed Operations Insurance), (c) arising, after physical possession of the products has been relinquished, out of the Contractor’s products or reliance upon a representation or warranty with respect thereto (Products Liability Insurance), and (d) assumed under this Contract (Contractual Liability Insurance). The policy shall be endorsed to delete from the contractual liability coverage any exclusion for actions on a contract for a third-party beneficiary arising out of a project for a public authority. This policy shall include coverage for explosion, collapse and underground operations (XCU hazards).” (Emphasis supplied.)
Thus, the contract required Bouley to procure duplicate coverage for personal injury losses: Bouley was to obtain its own liability coverage, including coverage for contractual liability, and to also purchase liability coverage for the City. Given the broad contractual indemnification clause, Bouley would be required to indemnify the City for any liability for injuries incurred by the City. The inclusion of the clause requiring Bouley to obtain insurance coverage for its contractual liability for injuries clearly indicates the intent of the parties that, in the event of the City’s being held liable for a personal injury caused by anyone’s negligence, the loss should be charged to Bouley and be borne by the insurance carrier which insured either Bouley’s contractual liability or the City’s liability.
Bouley asserts that it obtained the insurance coverages required by the contract from the Home Insurance Company, and thus, the same insurer insured both the contrac *1079 tor and the owner for liability for personal injuries. Bouley argues that the indemnification clauses should be read together with these insurance provisions, and that by providing the required insurance coverages for the benefit of the City, Bouley effectively preindemnified the City to the extent of the insurance coverage, an amount which exceeds the amount demanded in plaintiffs’ complaint.
The court has examined the contract provisions to determine whether the parties intended that the contractual indemnification clause, in combination with the requirement that associated insurance coverages be procured, should supersede the City’s right to common-law indemnification. A contract is to be interpreted so as to give effect to the intent of the parties as expressed in the unequivocal language of its clauses. (Breed v Insurance Co. of North Amer., 46 NY2d 351, 355.) Since the contract provisions imposed contractual liability and contractual indemnification of far greater scope than that imposed by the common law, the court concludes that the parties agreed to be governed by the contract’s allocation of liability in lieu of the quasi-contractual indemnification of the common law. Although the Court of Appeals has not examined this issue (see Lopes v Rostad, 45 NY2d 617, 625), the court does not doubt that such an arrangement can be achieved between sophisticated business organizations acting at arm’s length. (Hogeland v Sibley, Lindsay & Curr Co., 42 NY2d 153.) Here, the nature of the parties and the unequivocal language of the contract indicate that the parties intended to, and did, supersede the City’s narrow right of common-law indemnity with the broad contractual indemnity clause.
Such an interpretation of the contract is also required to prevent the inequitable situation where the same insurer provides coverage for the owner and the contractor, and then takes advantage of its control of the owner’s third-party action so as to bring the third-party claim outside the scope of its coverage by manipulating the theories of indemnity. (See Feller v Sano-Rubin Constr. Co., 82 Misc 2d 890, 891.)
Here, unlike the facts considered in Ruben v Pahlavi Foundation (NYLJ, April 22, 1981, p 13, col 6), the contrac *1080 tor did obtain coverage for liability assumed by the contractor under the contract and this coverage was provided by the same insurer that provided the liability coverage for the owner. It is well settled that where, as here, the same insurer provides coverage for the owner and the contractor, the insurer owes a duty of fair dealing and the attorneys provided by the insurer representing the owner are equitably precluded from bringing a third-party action based upon common-law rather than contractual indemnification. (United States Steel Corp. v Hartford Acc. & Ind. Co., 511 F2d 96, 101; Feller v Sano-Rubin Constr. Co., supra, p 891; cf. Ruben v Pahlavi Foundation, supra, p 14, col 1.)
Here, Bouley procured liability insurance for the City to protect it from liability for injuries sustained in the course of construction, and it was the intention of the parties that this insurance would cover such losses. If the City were permitted to prosecute and prevail upon its common-law claim, then the loss would be paid by Bouley’s employer’s liability carrier, the State Insurance Fund, and not by the Home Insurance Company. Thus, by electing a common-law theory of indemnity, the City’s insurer will be able to evade its liability under the broad bargained-for indemnification agreement and its liability policy covering the City. Since the Home Insurance Company agreed to insure both the City’s and Bouley’s liability arising from performance of the contract, it is obligated to pay the loss whether or not it successfully prosecuted a contractual indemnification action. The only way it can avoid paying is by shifting the loss to the State Insurance Fund by means of a common-law indemnification action. Such a strategy is clearly inequitable for Bouley’s employer’s liability insurer, who has the right to rely on not being liable for causes of action arising under its insured’s indemnification contract where it does not insure that contract. (See Feller v Sano-Rubin Constr. Co., supra, p 891.)
Here, the parties clearly agreed to be bound by their contractual allocation of risks and liabilities, and their contract can only be interpreted as having superseded the City’s common-law right to indemnification. The City exchanged this right for the broader contractual right of indemnification and for the procurement of liability insur *1081 anee at the expense of Bouley. It would be an inequitable perversion of the intention of the parties to permit the City’s common-law action to continue. Therefore, the City’s third-party action must be dismissed on the ground that the City agreed to the imposition of contractual liability and the procurement of insurance by Bouley in lieu of its common-law right to indemnity.
Accordingly, Bouley’s motion is granted and the City’s third-party complaint is dismissed. No costs.