OPINION OF THE COURT
Thomas P. Flaherty, J.
On September 1,1978, plaintiff Joseph P. Ciffa was employed as a carpenter by third-party defendant John W. Cowper Co., Inc. (Cowper) when a scaffold plank furnished by defendant H. J. Mye Lumber Corporation (Mye Lumber) broke resulting in *893 serious personal injuries to Mr. Ciffa. The jobsite was owned by defendant Jewish Federation Housing Development Fund Company, Inc. (Jewish Federation). Plaintiff and his wife subsequently commenced this suit for personal injury and loss of services against Jewish Federation predicated upon theories of common-law negligence and violation of Labor Law § 240 (1), and against Mye Lumber based upon common-law negligence, strict products liability and breach of warranty. By its third-party complaint, Mye Lumber sought contribution from Cowper (CPLR art 14; see also, Dole v Dow Chem. Co., 30 NY2d 143). Jewish Federation in its third-party complaint claimed indemnification from Cowper based upon both common-law and contractual indemnification. The first cause of action in the Jewish Federation complaint alleged “If [Jewish Federation] is found to be liable to the plaintiffs or to the co-defendant, this liability will be derivative, statutory and secondary to the primary negligence of cowper which furnished the scaffold plank for use by the plaintiff, Joseph ciffa, in violation of Labor Law Section 240 and 241 OSHA and rules promulgated thereunder.” In its second cause of action Jewish Federation alleged that, prior to the commencement of construction by Cowper, a contract[1] was entered into with Cowper containing the following indemnification clause: “To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the owner and the Architect and their agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorneys’ fees, arising out of or resulting from the performance of the work, provided that any such claim, damage, loss, or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act directly or indirectly employed by any of them or anyone for whose acts any of them may be liable regardless of whether or not it is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Paragraph”.
Jewish Federation concluded that if it is found liable to the plaintiffs or the codefendant it will be entitled to be fully *894 indemnified against such liability by Cowper and in addition recover its attorneys’ fees and expenses in the first-party action.
The difficulty present herein involves a disagreement between Cowper’s two insurance carriers. The Aetna Casualty and Surety Company (Aetna) had issued a comprehensive general liability policy to Cowper while Lumbermen’s Mutual Casualty Company (Kemper) furnished Cowper’s workers’ compensation policy which provided IB coverage in the event that Cowper is named a third-party defendant in a lawsuit commenced by an employee, as is the case at bench. Parenthetically, defendant Mye Lumber also had its comprehensive general liability coverage with Aetna on the date of plaintiff’s injury.
With the agreement of the principals and the assistance of counsel, a settlement was effected among the parties whereby the defendants paid and the plaintiffs accepted, inter alla, the sum of $185,000, with $18,500 of that amount contributed by Mye Lumber in full and final settlement of any and all claims against that defendant and with a discontinuance of the Mye Lumber third-party action against Cowper. As part of the settlement package the compensation lien in the amount of $24,000 was waived by Kemper as to the plaintiffs but specifically reserved with reference to the ultimate liability for payment or contribution between Aetna and Kemper.
Simply stated, the payment at issue between Aetna and Kemper is the sum of $166,500 plus $24,000 totaling $190,500, with an additional claim by Jewish Federation still to be resolved relative to attorneys’ fees and expenses incurred. With the case in this posture the court, upon the stipulation of all parties, converted the action to one for a declaratory judgment leaving for determination the rights, duties and obligations between Aetna and Kemper, and between Aetná and Jewish Federation should the court conclude that the contract of indemnification between those two principals is to be given effect. The attorneys for both carriers insuring Cowper stipulated that Cowper was negligent on September 1, 1978, which negligence resulted in the accident and subsequent injuries to plaintiff Joseph P. Ciffa. The actual agreement between counsel resulted in a stipulation that the plaintiffs would prevail against Jewish Federation, whose liability was only statutory or vicarious, allowing Jewish Federation to pass that responsibility on to Cowper which was actively negligent. In keeping with such understanding this court finds that the plaintiffs would succeed against Jewish Federation which was vicariously or secondarily liable. The court also finds active negligence on the part of *895 Cowper resulting in complete indemnification of Jewish Federation by Cowper. Predicated upon the stipulation of the parties, the court also finds that the Aetna policy contains the standard “Exclusion (j)” clause which was the subject of the Court of Appeals determination in Insurance Co. v Dayton Tool & Die Works (57 NY2d 489). It was also stipulated, and the court finds, that the contractual indemnification between Jewish Federation and Cowper is not against public policy and is not unconscionable. The parties agreed that any possible effect of General Obligations Law § 15-108 be waived.
Kemper argues that its coverage due Cowper is pursuant to section IB of its workers’ compensation policy which provides coverage to an employer brought in as a third-party defendant in a lawsuit commenced by its employee. Proceeding from that point Kemper takes the position that Aetna must share equally in the amount paid to plaintiffs under the settled principle set forth in Dayton Tool (supra). That argument proceeds on the basis that Aetna, as Cowper’s comprehensive general liability carrier, is in effect a coinsurer.[2] Kemper reaches this conclusion in what the court construes as a misreading of the Jewish Federation third-party complaint. Kemper contends that such complaint sets forth two causes of action, the first seeking what Kemper categorizes as Dole v Dow (supra) indemnity and the second for contractual indemnity.
In the first instance, Dole v Dow (supra), does not address itself to indemnity but rather to contribution. Secondly, the third-party complaint clearly sets forth in its first cause of action a claim for common-law indemnification and there is no demand whatsoever for contribution, nor could there be when one considers the factual background of the case at bar and the relationships between the various parties where all agree that Cowper was guilty of active negligence and the negligence of Jewish Federation was solely vicarious as statutorily provided in Labor Law § 240. “The rule in the Dole case had, primarily, of course, the dramatic effect of allowing comparative apportionment among joint tort-feasors even where their respective degrees of responsibility for the accident were not equal. To this extent the rule in the Dole case went beyond merely correcting the peculiar New York development of ‘active and passive’ negligence terminology and doctrine in third-party liability and *896 practice (for an analysis of that development, see Bush Term. Bldgs. Co. v. Luckenbach S. S. Co., 11 A D 2d 220, supra). It was hardly intended to overturn basic and satisfactory principles of common-law indemnification between vicariously liable tortfeasors and tort-feasors guilty of the acts or omissions causing the harm. In short, the apportionment rule applies to those who in fact share responsibility for causing the accident or harm, and does not extend further to those who are only vicariously liable * * * as here, the owner of a building who contracts with an independent contractor exclusively responsible for maintenance of the building or parts of it.” (Rogers v Dorchester Assoc., 32 NY2d 553, 565-566.)
As the Court of Appeals stated in D'Ambrosio v City of New York (55 NY2d 454, 462), “where one is held liable solely on account of the negligence of another, indemnification, not contribution, principles apply to shift the entire liability to the one who was negligent (see, also, Logan v Esterly, 34 NY2d 648).”
Dayton Tool (supra) involved two cases seeking insurance compensation for recoveries which were based on contribution pursuant to Dole v Dow (supra). The Dayton Tool court held that while “Exclusion (j)” applied to recoveries based upon indemnification it did not apply to instances involving contribution. Since the action at bar is clearly predicated upon indemnification, “Exclusion (j)” is applicable and Aetna, Cowper’s comprehensive general liability carrier, is relieved from any policy obligations in this regard.
Turning to the second cause of action in the Jewish Federation complaint, it is undisputed that it sounds in contractual indemnification. Without repeating the text of the indemnification clause contained in the contract between Jewish Federation and Cowper (supra), it should suffice to point out that such clause provides “To the fullest extent permitted by law, the contractor shall indemnify and hold harmless the owner * * * from and against all claims, damages, losses and expenses, including but not limited to attorneys’ fees [resulting] out of or resulting from the performance of the work”. The last sentence of the indemnification clause provides: “Such obligation shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Paragraph”.
Assuming there was no indemnification contract between Jewish Federation and Cowper, under established and long-recognized principles of common law Jewish Federation would have been entitled to complete indemnification from Cowper in *897 this instance. Unless the parties did something to alter their responsibilities by enlargement or diminution,
“[t]he general rule is that a right of implied indemnification will arise in favor of one who is compelled to pay for another’s wrong. (28 N. Y. Jur., Indemnity, § 11, p. 27.)
“As to contractual indemnity, there is a different rule. It has long been recognized that a party may protect itself from losses resulting from its liability for negligence by means of an agreement to indemnify.” (Margolin v New York Life Ins. Co., 32 NY2d 149, 152-153.)
This court finds that the instant indemnity agreement contains broad and all-inclusive language clearly expressing the contracting parties’ unequivocal intention to have Cowper assume the entire risk of any liability arising out of or resulting from the performance of the work at the Jéwish Federation jobsite (see, Margolin v New York Life Ins. Co., supra). Likewise, there is no difficulty in determining the intent of the parties from the clear, broad language of the indemnification provision (see, Vey v Port Auth., 54 NY2d 221). It is undisputed that the plaintiff Joseph P. Ciffa suffered bodily injury caused in whole or in part by the negligence of Cowper in performance of its work for Jewish Federation. Under such circumstances “the indemnity provision became controlling with respect to the responsibility and liability for the injury.” (April v Sovereign Constr. Co., 55 NY2d 627, 628.)
In an analogous situation it was held that “The court has examined the contract provisions to determine whether the parties intended that the contractual indemnification clause, in combination with the requirement that associated insurance coverages be procured, should supersede the City’s right to common-law indemnification. A contract is to be interpreted so as to give effect to the intent of the parties as expressed in the unequivocal language of its clauses. (Breed v Insurance Co. of North Amer., 46 NY2d 351, 355.) Since the contract provisions imposed contractual liability and contractual indemnification of far greater scope than that imposed by the common law, the court concludes that the parties agreed to be governed by the contract’s allocation of liability in lieu of the quasi-contractual indemnification of the common law. Although the Court of Appeals has not examined this issue (see Lopes v Rostad, 45 NY2d 617, 625), the court does not doubt that such an arrangement can be achieved between sophisticated business organizations acting at arm’s length. (Hogeland v Sibley, Lindsay & Curr Co., 42 NY2d 153.) Here, the nature of the parties and the *898 unequivocal language of the contract indicate that the parties intended to, and did, supersede the City’s narrow right of common-law indemnity with the broad contractual indemnity clause.” (Covert v City of Binghamton, 117 Misc 2d 1075, 1079.) Citing Feller v Sano-Rubin Constr. Co. (82 Misc 2d 890, 891), the court concluded that shifting the loss from the comprehensive general liability carrier to the employer’s liability insurer by the strategy of a common-law indemnification action was inequitable to the employer’s liability insurer, who has the right to rely on not being liable for causes of action arising under its insured’s indemnification contract where it does not insure that contract. (Covert v City of Binghamton, at p 1080.)
As the Appellate Division, Second Department, recently held, “there is no need to consider the further question of common-law indemnification” (Kenny v Fuller Co., 87 AD2d 183, 192, Iv denied 58 NY2d 603), in the face of a “strong, unequivocal hold-harmless provision” (p 191) contained in an indemnification agreement.
Aetna argues that the last sentence of the indemnification agreement dilutes the entire strength of that clause as it provides that “Such obligation shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Paragraph”. Simply stated, Aetna urges that the language of this sentence results in the common-law indemnification cause of action remaining viable, thereby negating its responsibility to fund Cowper’s obligation under the contractual indemnification clause and rendering Kemper totally responsible for the monetary obligation pursuant to the common-law indemnification theory.
This court finds that the language “any other right or obligation of indemnity” does not and was not intended to modify the broad indemnification “To the fullest extent permitted by law”. The language of the last sentence merely expresses recognition of the fact that there could be other direct actions, indemnification actions, and actions for contribution among the persons described and others not a party to the agreement which would not be and were .not meant to be effected by the terms thereof.
The court concludes that the parties clearly expressed their unequivocal intent to have Cowper assume the entire risk of any liability arising out of or resulting from the performance of the work under contract between Cowper and Jewish Federation. This conclusion is based upon the broad and all-inclusive language contained in the indemnity agreement, which is not diminished by the final sentence thereof.
*899 The court directs that judgment be entered declaring Aetna solely and completely obligated to compensate Cowper for any recovery by the plaintiffs against Jewish Federation, within the limits of its comprehensive general liability policy, and that Jewish Federation is entitled to its attorneys’ fees and expenses incurred as provided in such agreement, in any amount to be agreed upon between Aetna and Jewish Federation. In the event that no agreement is reached in that regard a hearing is to be held before the undersigned on that issue.

.. The contract was the Standard American Institute of Architects “General Conditions of the Contract for Construction” 1976 edition with this indemnification clause contained in article 4, paragraph 4.18.1.

. The Aetna policy, similar to the policy in Dayton Tool (supra), contains “Exclusion (j)” which states that the policy does not apply “to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury”.