**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,** Plaintiff,

v.

**AETNA CASUALTY AND SURETY CORP., Defendant.**

No. 90 Civ. 3870(JES).

United States District Court, S.D. New York.

May 21, 1992.

Hayes & Ryan, New York City (Thomas D. Hughes, of counsel), for defendant.

Ohrenstein & Brown, New York City (Mark J. Bunim, Steven H. Rosenfeld, of counsel), for plaintiff.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. ("National") brings this action for a declaration that defendant Aetna Casualty and Surety Corporation ("Aetna") was a co-insurer with National with respect to certain defenses and indemnity obligations owed to an insured. The matter was submitted to the Court upon stipulated facts for judgment pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## FACTS

In September 1981, the Metropolitan Transportation Authority (the "MTA") and Karl Wrecking Company, Incorporated ("Karl") entered into a contract whereby Karl was to provide certain wrecking services to the MTA at an MTA Storage Complex. *See* Stipulation of Agreed Upon Facts and Documents ("Stip.") at ¶ 3. The contract required that Karl indemnify the MTA for all physical injuries to persons or damage to property occurring upon the work site or arising out of that work. *See id.* at ¶ 4. The contract also required Karl to obtain an owner's liability insurance policy with the MTA as the named insured. *See id.* at ¶ 5. Karl arranged with National for the issuance of the required policy, as well as for a general liability insurance policy with Karl as the named insured, both of which were dated October 31, 1981. *See id.* at ¶¶ 6 & 11; Exs. B & F. Karl also maintained at this time a workers' compensation insurance policy with Aetna which expressly excluded liability assumed under a contract. *See id.* at ¶ 12; Ex. G.

In March 1984, a Karl employee commenced an action in the Supreme Court of the State of New York against the MTA for damages arising out of personal injuries allegedly suffered while working for Karl at the MTA site. *See id.* at ¶¶ 8 & 9. In February 1986, the MTA, represented by a law firm selected by National, commenced a third-party action against Karl alleging only common law indemnification and contribution. *See id.* at ¶ 10. National

also selected a law firm to represent Karl. *See id.* at ¶ 14. Aetna did not participate in the action throughout the course of discovery. *See id.* at ¶ 16.

In November 1989, a suit negotiator for National advised Aetna that National would not settle the aforesaid action unless Aetna contributed fifty percent to a proposed settlement. *See id.* at ¶ 21. Aetna maintained that the third-party action was improperly brought by National against Karl since Karl was its own insured, but in order to facilitate settlement, agreed to pay twenty-five percent without prejudice to a subsequent action between the respective insurance companies, to determine whether, and to what extent, Aetna was liable for a share of the settlement. *See id.* at ¶ 22.

## DISCUSSION

█ It is well settled that an insurer has no right of subrogation against its own insured for a claim arising from the very risk for which the insured was covered. *Pennsylvania General Ins. Co. v. Austin Powder Co.*, 68 N.Y.2d 465, 502 N.E.2d 982, 510 N.Y.S.2d 67 (1986). In *Pennsylvania General*, the insurer, after settling a personal injury action under a basic automobile policy on behalf of the owner of a truck that had exploded, interposed a cross-claim for contract indemnification against the renter of the truck, who was also named as an additional insured under the same basic policy. The New York Court of Appeals, expressly relying on public policy concerns arising out of the potential for conflict of interest inherent in such situations, held that the cross-claim could not be sustained.[1] *Id.* at 472, 502 N.E.2d at 986, 510 N.Y.S.2d at 71.

█ In that case, as here, the interests of the insured-indemnitor could only be protected through the vigorous defense of the insured-indemnitee in the underlying personal injury action. Yet if indemnification could be had here from the indemnitor

through a separate insurance policy maintained by the indemnitor with another insurer, the insurer would have no incentive to defend the indemnitee on the issue of liability because it would have no economic interest in doing so. *Id.* Thus, allowing the indemnification claim here would place National's own interests at variance with those of the MTA.

Indeed, the facts of this case amply demonstrate that National did in fact place its own interests ahead of its insured's. National, which controlled MTA's defense, chose not to assert the MTA's contract indemnification claim against Karl, which it was in MTA's interest to assert, for the specific purpose, as was conceded at Oral Argument, of triggering Aetna's liability under Karl's workers' compensation policy which excluded coverage for contract indemnification claims. This is especially evident since the reports of the law firms appointed to represent the MTA and Karl indicated the existence of a "very strong contractual indemnification provision" in the MTA wrecking contract, and National's own files indicated a "very valid hold harmless clause." *See* Stip. at Ex. L. Clearly, the omission of the contractual indemnification claim, on this record, was not in the best interests of the MTA and leads to the inescapable conclusion that National was orchestrating the litigation so as to shift its liability to Aetna.

This conclusion is supported by *Covert v. City of Binghamton*, 117 Misc.2d 1075, 459 N.Y.S.2d 721 (Sup.Ct.1983), which this Court finds persuasive. In that case, where the same insurer insured both the contractor and the owner, the court interpreted the underlying contract to provide that the contract indemnification clause superseded the owner's right of common law indemnification, so as "to prevent the inequitable situation where … [the insurer] takes advantage of its control of the own-

---

1. In *Pennsylvania General*, the Court was not persuaded by the argument asserted there, and which National asserts here, that this claim should be allowed because the indemnitor had expressly agreed to indemnify and had obtained separate insurance to cover that loss. "Indeed,

the public interest in assuring integrity of insurer's relations with their insureds and in averting even the potential for conflict of interest in these situations must take precedence over the parties' private contractual arrangements." *Id.* at 472, 502 N.E.2d at 986, 510 N.Y.S.2d at 71.

er's third-party action so as to bring the third-party claim outside the scope of its coverage by manipulating the theories of indemnity." *Id.* at 1079, 459 N.Y.S.2d at 724. The court stated that where the same insurer provides coverage for the owner and contractor, "the insurer owes a duty of fair dealing and the attorneys provided by the insurer representing the owner are equitably precluded from bringing a third-party action based upon common-law rather than contractual indemnification." *Id.* at 1080, 459 N.Y.S.2d at 724. *See United States Steel Corp. v. Hartford Accident & Indem. Co.,* 511 F.2d 96 (7th Cir.1975); *Feller v. Sano–Rubin Constr. Co.,* 82 Misc.2d 890, 370 N.Y.S.2d 349 (Sup.Ct. 1975).[2]

Finally, plaintiff's reliance on *Hartford Accident v. Michigan Mutual Ins. Co.,* 61 N.Y.2d 569, 463 N.E.2d 608, 475 N.Y.S.2d 267 (1984), is misplaced. Indeed, that case supports Aetna's position here. In *Hartford,* the Court held that a primary insurer owes the same duty of good faith to the excess carrier that it owes to its own insureds, and that therefore a question of fact existed as to whether the primary carrier, by failing to implead an affiliated company, was properly acting to protect its insured, or whether it was improperly acting in its own interests by manipulating the litigation so that the excess carrier's policy would be activated and the primary carrier would not have to share in or substitute for that liability. *Id.* at 574, 463 N.E.2d at 610, 475 N.Y.S.2d at 269. Since there is no question in the instant case that National was in fact manipulating the litigation for its own benefit and not for the benefit of either of its insureds, the public policy concerns expressed in *Pennsylvania General* dictate that National's contentions be rejected.

CONCLUSION

Accordingly, for the reasons given above, National's request for declaratory relief shall be and hereby is denied. The Clerk of the Court is directed to close the above-captioned action.

It is SO ORDERED.

2. The *Aetna Casualty & Surety Co. v. Lumberman's Mutual Casualty Co.,* 136 A.D.2d 246, 527 N.Y.S.2d 143, *appeal denied,* 73 N.Y.2d 701, 532 N.E.2d 101, 535 N.Y.S.2d 595 (1988), case, relied on by plaintiff, is inapposite. Although the *Aetna* case involved one insurance company, as subrogee, suing another insurance company on the theory that it was a co-insurer for the liability at issue, the plaintiff insurance company was not involved in the prosecution of the third-

party action and consequently no public policy concerns were raised. This distinction is equally applicable to the *Warren* and *Mennis* cases relied on by plaintiff. *Warren v. Arena Assocs. Inc.,* 109 A.D.2d 738, 486 N.Y.S.2d 56 (2d Dep't 1985); *Mennis v. Westchester County Playland Comm'n,* 87 A.D.2d 862, 449 N.Y.S.2d 300 (2d Dep't), *appeal dismissed,* 57 N.Y.2d 772, 454 N.Y.S.2d 992, 440 N.E.2d 1340 (1982).