John **ROSATO**, et ano., Plaintiffs,

v.

**KARL KOCH ERECTING CO., INC.,**
**Third–Party Plaintiff, and**
**Defendant,**

v.

**THUNDERBIRD CONSTRUCTORS, INC., Third–Party Defendant.**

**THUNDERBIRD CONSTRUCTORS, INC., Fourth–Party Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY, et ano., Fourth–Party Defendants.**

No. CV 92 5076 (RJD) (MDG).

United States District Court,
E.D. New York.

July 20, 1994.

Frederick B. Simpson, Ahmuty, Demers & McManus, Albertson, NY, for third-party plaintiff.

Henry Stanziale, Brooklyn, NY, for third-party defendant.

### MEMORANDUM DECISION AND ORDER

GO, United States Magistrate Judge:

This is a diversity action to recover damages for work-related injuries. Although the primary claim is one for personal injuries, virtually all of the pretrial activity, including the instant motion for summary judgment, has revolved around disputes in two third-party actions over which insurance carrier will ultimately be responsible for payment of plaintiff's damages (if any) and the costs of litigation. Pursuant to 28 U.S.C. § 636(c), the third parties Karl Koch Erecting Co. and Thunderbird Constructors, Inc. have consented to have this motion determined by me.

### BACKGROUND

There are no material facts in dispute since the parties agree on the existence and contents of the two insurance policies and the contracts giving rise to this third party action.

Karl Koch Erecting Co., Inc. ("Koch" or the "Contractor"), the defendant and third-party plaintiff, is a general contractor. Koch entered into a contract with the New York State Department of Transportation (the "Owner") dated March 20, 1989 (the "Construction Contract") to perform certain reconstruction work on the West 207th Street bridge. Koch later subcontracted some of the work to Thunderbird Constructors, Inc. ("Thunderbird" or the "Subcontractor"), the third-party defendant, pursuant to a contract dated May 25, 1990 (the "Subcontract").

Section 7 of the Subcontract specifies that Thunderbird is responsible for injuries or damages resulting from its work and imposes on Thunderbird the obligation to indemnify Koch for such loss.[1] It also requires Thunderbird to maintain at its own expense all insurance specified in the Construction Contract, including workmen's compensation insurance, owner's liability and property insurance, and contractual liability and contingent liability insurance, indemnifying the Owner and Contractor.

## The Insurance Policies

As required by the Subcontract, Thunderbird purchased a general liability insurance policy dated September 24, 1990 issued by National Union Fire Insurance Company ("National Union") with limits of $1,000,000 per occurrence. Although the policy generally covers damages due to bodily injury and property damage, it also enumerates a number of exclusions from coverage, including one for bodily injury to an employee. This exclusion is set forth in an endorsement for Employee Bodily Injury Exclusion attached to the policy. This endorsement states that the policy does not apply to:

(e) "Bodily injury" to:

(1) an employee of the insured arising out of and in the course of employment by the insured; ...

(3) any relative or member of the family of that past, present, or prospective employee as a consequence of (1) or (2) above.

This exclusion applies:

(1) whether the insured is or may be held liable as an employer or in any other capacity; and

(2) to any obligation to share damages with or repay someone else who must pay damages because of the injury.

The National Union policy also extends blanket insurance coverage to other persons to whom Thunderbird is contractually obligated to obtain insurance, as set forth in Endorsement MS # 7:

### Blanket Additional Insured

Any person or organization, to whom or to which the named insured is obligated by virtue of a written contract or written agreement to provide insurance such as is afforded by this policy is included as an additional insured under this policy. But only as respects liability for bodily injury and or property damage arising from an occurrence, and caused by operations performed by or on behalf of the named insured for such entity or entities.

Since the Subcontract obligates Thunderbird to insure Koch, Koch is an additional insured under the National Union policy. A certificate of insurance evidencing coverage is annexed as Exhibit A to Koch's Statement of Undisputed Facts.

In accordance with the Subcontract, Thunderbird also acquired worker's compensation and employer's liability insurance from the State Insurance Fund with $100,000 limits per accident. The policies from both National Union and the State Insurance Fund were effective for one year beginning September 24, 1990.

## This Action

Plaintiff John Rosato ("Rosato"), an employee of Thunderbird, alleges in his complaint that he fell while working on the West 207th Street bridge on May 13, 1991. He

---

**1.** Section 7 of the Subcontract, *inter alia*, provides that:

The Contractor shall not be responsible for injury to any person, including death, whether employed by the Subcontractor or otherwise, or to the public, or for damage to any property, ... arising from the acts of the Subcontractor or his employees during the progress of the work against all of which injuries, death and damages to persons and property the Subcontractor must properly guard, and make good all such damage from whatever cause. The Subcontractor shall be liable to indemnify and save harmless the Contractor ... from all dam-

ages or liability to which the Contractor ... may be subjected by reason of injury, including death at any time resulting therefrom, to the person or property of others resulting from the performance of the work of the Subcontractor hereunder ...

In the event of suit being brought against the Contractor for any claim growing out of any of the above causes the Subcontractor shall pay all expenses of such litigation as soon and as often as incurred ...; failure to pay such expenses or judgment in the manner above stated shall be construed as a breach of this agreement.

and his wife commenced this action against Koch, citing a failure to provide a ladder and other protective devices.

Koch, in turn, brought a third party action against Thunderbird, alleging, *inter alia,* that Thunderbird was negligent and failed to provide a safe work place for Rosato. Koch also asserted as its second and third causes of action claims under the Subcontract for breach of contract and for indemnification.

National Union initially refused to defend either Koch or Thunderbird, in reliance on the employee bodily injury exclusion. As a result, Thunderbird brought a third-party declaratory judgment action against National Union and American International Group, Inc. ("AIG") seeking to compel them to defend and indemnify Koch as an additional insured under the National Union policy. Thunderbird also sought to declare the employee exclusion in the National Union policy void and to require these third-party defendants to defend Thunderbird. By letter dated January 7, 1994, National Union agreed to defend Koch under Thunderbird's policy. Thunderbird, National Union and AIG then entered into a stipulation of dismissal of that third-party complaint.[2]

Thunderbird has moved for summary judgment against Koch to dismiss the third-party complaint or, in the alternative, to dismiss the second and third claims for relief.

### DISCUSSION

Summary judgment is appropriate pursuant to Fed.R.Civ.P. 56 when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 710 (2d Cir.1991) (citations omitted). The moving party bears the initial burden of demonstrating an absence of disputed material facts. Once it has done so,

the burden shifts to the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In determining whether there is a genuine issue of material fact, the court must resolve ambiguities and draw inferences in favor of the non-moving party. *Celotex,* 477 U.S. at 322–323, 106 S.Ct. at 2552–53 (1986); *Capital Imaging Associates, P.C. v. Mohawk Valley Medical Associates, Inc.,* 996 F.2d 537, 542 (2d Cir.1993).

Thunderbird argues that Koch's claims are barred because of public policies limiting an insurer's right to subrogation against its insured. Since the real parties in interest in this action are National Union and the State Insurance Fund—the insurers defending Koch's and Thunderbird's respective interests under policies obtained and paid for by Thunderbird—the specific question presented is whether National Union is precluded from asserting a claim for contractual indemnification against Thunderbird to reach the employer's liability insurance policy issued by the State Insurance Fund.

The rule in New York[3] is that an insurer has no right of subrogation against its own insured with respect to claims arising from the very risk for which the insured was covered. *Pennsylvania General Insurance Company v. Austin Powder Company,* 68 N.Y.2d 465, 472, 510 N.Y.S.2d 67, 68, 502 N.E.2d 982, 983 (1986). This is the case even if the insured has contractually agreed to indemnify the party whose rights have been subrogated to the insured. *Id.* Underlying this rule are two public policy concerns: first, an insurer should not be able to pass its loss to its own insured who paid for the coverage, and second, an insurer should not be placed in situations with a potential for conflict of interest where it would have little incentive to defend one of its insured. *Id.* at 471–72, 510 N.Y.S.2d at 70–71, 502 N.E.2d at 985–86. In *Pennsylvania General,* the New York Court of Appeals thus refused to per-

---

**2.** Thunderbird attaches a copy of the stipulation as Exhibit H, but the document has not yet been filed with the Court and docketed.

**3.** The parties have proceeded on the assumption that New York's substantive law applies and, by

their conduct, have consented to application of New York substantive law. *Wm. Passalacqua Builders Inc. v. Resnick Developers South, Inc.,* 933 F.2d 131, 137 (2d Cir.1991).

mit an insurer, which had settled an action on behalf of an owner of a truck, to assert a claim for contractual indemnification against the renter of the truck. The court found that the insurer had breached its obligation to defend the renter, who was an additional insured under the same insurance policy as the owner's.

*Pennsylvania General* involved one automobile policy insuring the owner and renter of a single vehicle. When confronted with similar issues of vicarious owner liability in situations involving two insurance policies, lower courts have extended the rationale of *Pennsylvania General* to bar subrogated claims for indemnification.

Proponents argued for this result under the doctrine of "preindemnification"—*i.e.,* that the obligation to procure insurance effectively waived a party's right to common-law indemnification. In *North Star Reinsurance Corp. v. Continental Ins. Co.,* 82 N.Y.2d 281, 287, 604 N.Y.S.2d 510, 512, 624 N.E.2d 647, 649 (1993), the New York Court of Appeals expressly rejected the "preindemnification" doctrine "in favor of common-law indemnification principles" and adopted "the independent, narrower, antisubrogation rule."

The Court found that "preindemnification" represented a departure from both established equitable principles of indemnification and the concept that the "wrongdoer ought to bear responsibility for the loss." *Id.* at 291, 604 N.Y.S.2d at 514, 624 N.E.2d at 651. However, it acknowledged that the rule of antisubrogation is a necessary exception to general principles of indemnification because of the policy concerns expressed in *Pennsylvania General. Id.* at 295, 604 N.Y.S.2d at 517, 624 N.E.2d at 654. The Court was particularly troubled with the situations that arose in each of the three First Department cases leading to *North Star.* In those cases an insurer, as subrogee of a vicariously liable owner under a policy obtained by a contractor, asserted indemnification claims against the contractor, who was also covered by the same insurer under a separate policy. As the Court noted, an insurer could manipulate the litigation to minimize liability under its own policy so as to reach the contractor's

other policies such as a workers' compensation or excess liability policy. *Id.* at 295–96, 604 N.Y.S.2d at 517, 624 N.E.2d at 654.

■ The applicability of the antisubrogation rule depends on the existence of two factors: (1) whether there is essentially one policy in effect purchased from a single insurer (2) which covers the same risk for two or more insureds. *Id.* at 295–96, nn. 4 & 5, 604 N.Y.S.2d at 517, nn. 4 & 5, 624 N.E.2d at 654, nn. 4 & 5. In the trilogy of cases discussed in *North Star,* all three insurers had issued insurance policies covering the vicarious liability of a landowner, as well as separate policies for general contractors liability. As the Court of Appeals recognized, it made little difference whether there is one policy or separate policies from the same insurer where "the two policies are integrally related and indistinguishable from a single policy in any relevant way." *Id.* at 295, 604 N.Y.S.2d at 517, 624 N.E.2d at 654. In this case, the number of policies is not at issue since Thunderbird had only one policy with National Union which covered Thunderbird as subcontractor and Koch as an additional named insured.

■ The critical issue here is whether the National Union policy covers Thunderbird and Koch for the same risk and insures them for the specific claims raised by plaintiffs. Thunderbird asserts, without explanation, that Koch's claims against Thunderbird are risks covered by the National Union policy. Such a position is not supported by the terms of the policy and is difficult to understand in light of Thunderbird's acknowledgement that it is not covered by the policy for direct claims for employee injuries, a risk for which Thunderbird had obtained a separate workers' compensation policy.

There is no ambiguity in the National Union policy as to the coverage provided and accordingly, the policy's "unambiguous terms are to be given their 'plain and ordinary meaning.'" *State of New York v. Blank,* 27 F.3d 783, 792 (2d Cir.1994) (quoting *Lavanant v. General Accident Ins. Co. of America,* 79 N.Y.2d 623, 629, 584 N.Y.S.2d 744, 747, 595 N.E.2d 819, 822 (1992)). The blanket additional insured endorsement clearly

extends coverage in this case to Koch for "damage[s] arising from an occurrence,[4] and caused by operations performed by or on behalf of [Thunderbird]." On the other hand, although the policy extends general liability coverage for Thunderbird as the named insured, it expressly excludes damages for bodily injuries to employees in the course of employment. This Employee Bodily Injury Exclusion also specifically states that it applies "to any obligation to share damages with or repay someone else who must pay damages because of the injury." Although exclusions from insurance policy coverage must be strictly construed, *Kimmins Indust. Serv. Corp. v. Reliance Ins. Co.*, 19 F.3d 78, 81 (2d Cir.1994), the language of the exclusion leaves little doubt that it applies to Koch's indemnification claim against Thunderbird as well as to direct employee claims against Thunderbird.

Because the policy clearly requires National Union to defend Koch, but not Thunderbird, with respect to the plaintiffs' claims, the policy does not cover the same risks as to both. Thus, the antisubrogation rule does not apply and National Union can assert its claims for indemnification against Thunderbird.

This result is consistent with the treatment of the three cases discussed in *North Star*. In affirming the three First Department decisions, the Court of Appeals applied the antisubrogation rule in two cases to bar the insurers' subrogation claims, but did not apply the rule in the third case because of certain exclusions in the pertinent insurance policy. *North Star*, 82 N.Y.2d at 296, 604 N.Y.S.2d at 517, 624 N.E.2d at 654. The exclusion in the policy in the third case (North Star) is strikingly similar to the exclusion in the National Union policy in this case. Both exclusions pertain to bodily injuries arising from employment sustained by employees of the named insured contractor.[5]

In this case, as in *North Star*, the antisubrogation rule does not apply because the exclusion for bodily injury rendered the policy inapplicable to the loss at issue. *North Star*, 82 N.Y.2d at 296, 604 N.Y.S.2d at 517, 624 N.E.2d at 654. *Contrast Prince v. City of New York*, 189 A.D.2d 33, 36, 594 N.Y.S.2d 235, 237 (1st Dep't 1993) (another of the cases discussed in *North Star*), where the Appellate Division noted that no exclusion exempted coverage under the policy.

Courts applying *North Star* have similarly examined the policies and found determination of coverage of the insured to be dispositive of the applicability of the antisubrogation rule. In *Larson v. City of New York*, N.Y.L.J., Jan. 25, 1994, at 21 (Sup.Ct. N.Y.Co.), the court found that the rule is not implicated where the insurance policy (also with National Union) contained an employee bodily exclusion similar to the clause in this case. The court in *Pierce v. City of New York*, 160 Misc.2d 600, 610 N.Y.S.2d 731 (Sup.Ct. Queens Co.1994), applied the rule because the only arguably relevant policy exclusion pertained to intentional torts and had no bearing on the liability issues in that case. The policy considered in *Boyd v. La-Guardia Corporate Center Associates*, N.Y.L.J., June 2, 1994, at 28 (Sup.Ct. N.Y.Co.) included a comparable employee bodily injury exclusion, which the court recognized would have precluded application of the antisubrogation rule had the policy not also contained a separate indemnification clause covering the insured contractor for the claims involved.

No public policies are violated if National Union is permitted to sue Thunderbird in this case. Since the National Union policy never covered Thunderbird for claims arising from injuries sustained by Thunderbird's employees, National Union is not attempting to "avoid the coverage which its insured purchased." *Pennsylvania General*, 68 N.Y.2d

---

**4.** Section V.9 defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

**5.** As the First Department noted, the policy excluded coverage for:

bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury.

*North Star Reinsurance Corp. v. Continental Ins. Co.*, 185 A.D.2d 187, 585 N.Y.S.2d 436, 437 (1st Dep't 1992).

at 471, 510 N.Y.S.2d at 70, 502 N.E.2d at 985 (quoting *Home Ins. Co. v. Pinski Bros.*, 160 Mont. 219, 226, 500 P.2d 945, 949 (1972)). More importantly, since National Union is not obligated under the policy to defend Thunderbird with respect to plaintiff's claims, there is no potential for conflict of interest in National Union's defense of Koch.[6] Thunderbird mistakenly extrapolates from the fact that National Union may be obligated under its policy to defend Thunderbird in certain circumstances to argue that National Union is now, in fact, suing Thunderbird as its insured.

For these reasons Thunderbird's motion for summary judgment to dismiss the third party complaint is denied. Thunderbird's alternative motion to dismiss the second and third causes of action in the third party complaint is also denied. Koch's second claim for relief is a very general claim that Thunderbird breached the terms of the Subcontract. *See* Third–Party Complaint, ¶¶ 11–14. Koch's third cause of action deals specifically with Thunderbird's obligation to indemnify under the Subcontract.

Thunderbird incorrectly argues that it has fulfilled the terms of the Subcontract simply by obtaining insurance. However, Thunderbird overlooks the fact that Section 7 of the Subcontract requires Thunderbird to indemnify Koch for all injuries as well as to procure insurance. This section also provides for payment of the costs of litigation.[7] In addition, the Subcontract imposes additional duties upon Thunderbird which it may have breached. Whether Thunderbird in fact breached those contractual obligations, as Koch alleges, can be determined after discovery.

Thus, Thunderbird's motion to dismiss the two claims fails as well.

### CONCLUSION

For the foregoing reasons, Thunderbird's motions are denied.

**SO ORDERED.**

---

6. Contrast cases where courts have found a conflict because the insurer tried to minimize liability under the policy it issued despite its obligation to defend its insured-indemnitee. *National Union Fire Ins. Co. v. Aetna Casualty and Surety Corp.*, 790 F.Supp. 491 (S.D.N.Y.), *aff'd*, 983 F.2d 1048 (2d Cir.1992) (insurer failed to assert contractual indemnification claim in order to trigger the insured workers' compensation policy); *Hartford Accident and Indemnity Co. v. Michigan Mutual Ins. Co.*, 61 N.Y.2d 569, 475 N.Y.S.2d 267, 463 N.E.2d 608 (1984) (insurer issuing liability and workers' compensation policies to three related companies failed to assert claim on behalf of one company against another in order trigger the first company's excess policy rather than the workers' compensation policy of the second company).

7. Thunderbird complained about the unfairness of this contractual obligation to pay Koch's attorneys as well as its own. The simple and most economical solution would be to have the same set of attorneys represent both Koch and Thunderbird. National Union has the same interest as Thunderbird in vigorously defending and minimizing liability since National Union may still be obligated to pay if plaintiff recovers damages in excess of the limits under the State Insurance Fund policy.