EQUITY FIRE AND CASUALTY
COMPANY, Plaintiff,

v.

Kim YOUNGBLOOD and Shalon Young-
blood, Minors, by and through their par-
ents Yvonne and L.C. Youngblood, et al.,
Defendants–Appellees,

Employers Health Insurance,
Defendant–Appellant.

No. 85507.

Supreme Court of Oklahoma.

Nov. 12, 1996.

Dennis N. Shook, Wagoner, for Defendants–Appellees.

Ronald Bennett, Tulsa, for Defendant–Appellant.

WATT, Justice.

Appellant, Employers Health Insurance, is the manager of the Ft. Howard Paper Company's employee benefit plan. The Plan appeals from an order of the District Court of Wagoner County, Honorable G. Bruce Sewell District Judge, ordering payment of $40,000.00 held in the registry of the court to Appellee, Yvonne Youngblood as mother and next friend of Kim Youngblood a minor.[1] The $40,000.00 was paid into court in an interpleader action by two liability insurance companies, Equity Fire and Casualty Company and State Farm Mutual Automobile Insurance Company, under the terms of an automobile liability policy and two uninsured motorist policies.

Kim Youngblood was injured in an automobile accident covered by the two liability insurance companies' policies. The liability insurance companies were dismissed from the action when they paid the limits of their policies into court. The liability insurance companies are not parties to this appeal. Ft. Howard Paper Company's self funded insurance benefit plan is covered under ERISA (the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1144(a), (b)(2)(A,B)). The Plan paid Kim Youngblood's medical expenses arising from the accident, $31,845.14. The Youngbloods allege that Kim Youngblood's total damages were more than $150,000.00, and the Plan admits this to be true.

Article 11 of the Plan, entitled "Subrogation and Reimbursement," gives the Plan certain rights to repayment of amounts it has paid on behalf of a "Plan Member."[2] The

---

1. The insurance companies paid into court a total of $50,000.00. The $10,000.00 not paid to Kim Youngblood are not at issue in this appeal.

2. Article 11 of the Plan reads in full as follows:
    Subrogation and Reimbursement
    11.1 *Subrogation.*
    (a) In General. When charges are incurred by a Plan Member for services relating to Accidental Injury or Illness for which any benefits are payable under this Plan, and the Accidental Injury or Illness arises under circumstances which may create a legal liability in another individual or organization, and whenever the Plan pays any Plan benefits to or on behalf of a Plan Member, the Plan Member's rights with respect to his or her right of recovery (if any) from a third party shall be subrogated to the Plan to the extent of Plan benefit payments.

(b) Plan Member's Obligations. The Plan Member's obligations under this Article 11 shall include, but shall not be limited to, the following:
    (i) Taking any affirmative action necessary to preserve a Plan Member's right of recovery and to obtain recovery from such individual or organizations;
    (ii) Avoidance of impairing, prejudicing or discharging the Plan's right of subrogation on the Plan Member's claims;
    (iii) Assisting the Plan as necessary to enforce its subrogation rights; and
    (iv) Paying to the Plan any amounts received from such individual or organization to the extent of Plan benefits paid; provided, however, that the Committee, at its sole discretion, may permit the Plan Member to pay to the

Plan Member here was L.C. Youngblood, who is Kim Youngblood's father, and an employee of Ft. Howard Paper company.

## ISSUE

The issue to be resolved is whether ERISA mandates the enforcement of the Plan's reimbursement provision, despite the fact that Kim Youngblood has received compensation far less than the total amount of her damages. We hold that ERISA does not mandate such a result here, and that the Plan's reimbursement provision does not apply here.

## DISCUSSION

■ The issue before us subsumes a question of Oklahoma law of first impression: Is a contractual subrogation or reimbursement provision, which contains no priority of payment provision, enforceable under Oklahoma law where the recipient of the benefits sought to be recovered has not been fully compensated by payments from a third party? We answer no.

### ERISA and Its Effect On Oklahoma Law

ERISA (the Employee Retirement Income Security Act of 1974, § 514(a), (b)(2)(A, B), as amended 29 U.S.C.A. § 1144(a), (b)(2)(A, B)) contains three provisions regarding preemption of state law. The first provision states that Congress intended ERISA to preempt state laws that relate to self funded employee benefit plans:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . .

Plan less than the full amount received from such individual or organization.

11.2 *Reimbursement.* When any Plan benefits are paid or provided for charges incurred by a Plan Member as a result of an Accidental Injury or Illness and that Plan Member makes a recovery (whether by settlement or judgment or otherwise) from any individual or organization equally or financially responsible for such Accidental Injury or Illness, then the Plan shall have a lien upon any such recovery, and the

29 U.S.C. § 1144(a). The general preemptive effect on subsection (a) is specifically limited by subsection (b), commonly called the "saving clause":

> Except as provided in subparagraph (B) nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

29 U.S.C. § 1144(b)(2)(a). The power that subsection (b) reserves to the states to regulate insurance, banking, and securities is expressly limited by subparagraph (2)(B) of that subsection, commonly called the "deemer clause":

> Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B).

In 1990 the United States Supreme Court decided *FMC Corporation v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). The court held that under ERISA, the subrogation clause in FMC Corporation's self-funded employee benefit plan was enforceable. The plan had paid the medical expenses of one of FMC's employee's daughter, whose injuries resulted from an automobile accident. The district court and the court of appeals had held that a Pennsylvania statute prohibiting subrogation or reimbursement in actions arising out of the maintenance or use of an automobile applied to the FMC plan. The Supreme Court observed that while ERISA returns to the states the power to regulate insurance, it expressly provides that a self funded plan shall not be

Plan Member shall reimburse the Plan to the extent that benefits were paid hereunder; provided, however, that the Committee, at its sole discretion, may permit the Plan Member to reimburse the Plan less than the full recovery amount received from such individual or organization. Nevertheless, in no event shall the Plan Member be required to make a reimbursement in an amount exceeding the recovery made by the Plan Member against such individual or organization.

"deemed to be an insurance company." Employee Retirement Income Security Act of 1974, § 514(a), (b)(2)(A, B), as amended 29 USCA § 1144(a), (b)(2)(A, B). The court said that the reason ERISA limits state regulation of ERISA plans is "Congress's desire to avoid 'endless litigation over the validity of State action.'" 498 U.S. at 65, 111 S.Ct. at 411, quoting Senator Javits's remarks in the Congressional Record.

The terms of the FMC plan's subrogation and reimbursement provisions were not stated in the opinion. Neither did the court discuss the effect of whether the beneficiary of the payments made by FMC had been fully compensated for her injuries.

### Decisions Since FMC Corporation v. Holliday

■■■ ERISA as interpreted by *FMC Corporation v. Holliday* has spawned many opinions, both state and federal. No clear rule can be discerned from these cases. A few guidelines do appear, however. First, state subrogation rules generally are preempted by ERISA. Second, an ERISA plan's rights to subrogation and reimbursement are governed by the terms of the plan when those terms are unambiguous. The courts have significantly disagreed over the effect of reimbursement language similar to that contained in the Ft. Howard plan when, as is the case here, the undisputed facts show that the plan beneficiary was not "made whole" by the payments she received. In most states reimbursement is not allowed against one who has not been made whole by the settlement or judgment in which the party seeking reimbursement claims a right.[3]

### Decisions Construing Genuinely Unambiguous Subrogation of Reimbursement Provisions

We have found only a few cases involving what to our minds were genuinely unambiguous reimbursement provisions. For example, in *Hershey v. Physicians Health Plan,* 498 N.W.2d 519, 520 (Minn.App.1993) the court enforced a plan provision, which said that the plan "will be reimbursed from any other existing claims including any claim by you for general damages.... [The plan] may collect ... *regardless of whether you have been fully compensated.*" [Emphasis added.] In *Ryan v. Federal Express Corporation,* 78 F.3d 123 (3d Cir.1996) the court enforced as unambiguous a plan that provided, it shall "be reimbursed ... 100% of the amount of covered benefits paid," and "If you receive any payments from the third party, the Company expects 100% reimbursement for any plan benefits paid." See also *Riley v. Herbes,* 524 N.W.2d 523 (Minn.App.1994), where the court enforced a plan subrogation provision providing that the plan "shall be paid ... before the payment of any recovery due from that party to the participant."

### A Different Result Is Called For Where the Plan's Terms Do Not Specify Priority of Repayment and Do Not Give Plan Managers the Right to Interpret the Plan

Unlike the examples cited above, most plans' reimbursement provisions, including the reimbursement provision before us today, are silent as to the priority of payment. We find persuasive the reasoning of a line of cases, representing both state and federal courts, which are similar on their facts to the case at bar. Those cases held that if a plan is silent about the priority of payment, does not expressly give its managers the right to resolve ambiguities, and the facts do not clearly show that the beneficiary's settlement included reimbursement for medical expenses, the plan will not be allowed to recover, despite ERISA.

---

**3.** The United States Court of Appeals for the Tenth Circuit reached a conclusion contrary to the conclusion we reach today concerning the make whole rule in *Fields v. Farmers Insurance Company, Inc.,* 18 F.3d 831, 836 (10th Cir.1994). There the court said that "It would be difficult to characterize the rule as 'predominant, let alone universal'", quoting from *Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293, 1297 (7th Cir.), certiorari denied 510 U.S. 916, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993). The court allowed enforcement of a subrogation clause similar to the one in this appeal, although the injured party admittedly had not been made whole. The court correctly observed that we had not yet passed on the applicability of the "make whole" rule to contractual subrogation provisions. For the reasons set forth in this opinion, we would not have allowed enforcement of the subrogation provision in *Fields*.

In *Sanders v. Scheideler and NEPCO EMBA,* 816 F.Supp. 1338, 1344 (D.C.W.D.Wis.1993), affirmed without opinion, 25 F.3d 1053, 1994 WL 234497 (7th Cir. 1994), the court said:

> The subrogation clause does not address the priority of the plan's subrogation rights ... to the undesignated proceeds of a limited insurance settlement. The majority common law rule precludes an insurer from exercising a right of reimbursement unless the insured's entire loss has been paid.

In holding against the plan, the court first held that a de novo standard of review was appropriate. That is the court would not defer to the judgment of the plan's managers concerning the plan's interpretation, but would independently interpret the plan's terms. The authority of the plan managers to "pass upon all claims by a member against the Association" was deemed insufficient to cause the court to defer to the managers' interpretation of the plan.[4] The court then adopted as the federal common law Wisconsin's make whole rule, which prohibits a party seeking subrogation or reimbursement out of recoveries made due to personal injuries from recovering until the injured party has been fully compensated.

In *Murzyn v. Amoco Corporation,* 925 F.Supp. 594 (D.C.N.D.Ind.1995), from which no appeal was taken, the court cited *Sanders* with approval, and adopted a federal common law make whole rule that applied in place of the Indiana rule, which mandated sharing proceeds of a settlement on a pro-rata basis.[5] The court interpreted the Amoco plan to mean that its right to reimbursement was limited to moneys recovered in settlement by the Murzyns that compensated them for expenses originally paid by the Amoco plan. The court then granted the Murzyns' motion for summary judgment, holding that the Murzyns had no obligation to reimburse the Amoco plan for the amounts the plan had paid on the Murzyns' behalf because it was undisputed that the Murzyns had not been fully compensated for their loss.

Courts from at least four states have reached the same conclusion as *Sanders* and *Murzyn.* *Schultz v. Nepco Employees Mutual Benefit Association, Inc.,* 190 Wis.2d 742, 528 N.W.2d 441 (Wis.App.1994); *Blue Cross/Blue Shield of Rhode Island v. Flam,* 509 N.W.2d 393 (Minn.App.1993); *Leasher v. Leggett & Platt, Inc.,* 96 Ohio App.3d 367, 645 N.E.2d 91 (Ohio App.1994); *Scholtens v. Schneider,* 274 Ill.App.3d 102, 653 N.E.2d 775, 210 Ill.Dec. 580 (1995). Those cases concluded that, despite ERISA, where a self funded plan's reimbursement provision is silent as to the priority of repayment, does not expressly give the plan's managers power to bind beneficiaries with its interpretation of the plan, and the plan beneficiary's settlement with a negligent third party has produced less than the value of the beneficiary's total loss, the plan may not enforce the plan's reimbursement clause.

*The Make Whole Rule is the Majority Rule*

■ The cases cited above make clear, and our own research convinces us that the make whole rule is the majority rule. See also Robert E. Keeton and Alan I. Widiss, *Insurance Law,* § 3.10 at 236 (1988); Allan D. Windt, *Insurance Claims and Disputes,* § 10.06 at 533 (2d ed. 1992). We adopt the make whole rule in contract subrogation and reimbursement cases where (1) the subrogation or reimbursement contract neither expressly sets priorities for the repayment of benefits, nor otherwise gives a right to subrogation or reimbursement before any funds are paid to the beneficiary, nor vests the plan manager's discretionary authority to interpret ambiguous provisions of the plan; and

---

4. This holding was consistent with many other decisions holding that the mere grant of decision making authority does "not necessarily confer discretionary authority to render decisions with regard to ambiguous provisions of the plan." See *Sanders,* 816 F.Supp. at 1343, quoting from *Baxter v. Lynn,* 886 F.2d 182 (8th Cir.1989).

5. What the court referred to as a pro rata rule is called the "common fund" rule in some jurisdictions. See *Scholtens v. Schneider,* 274 Ill.App.3d 102, 653 N.E.2d 775, 210 Ill.Dec. 580 (1995). Under the common fund rule a ratio is struck between the amount of compensation received by the beneficiary and the total amount of the beneficiary's damages and that ratio is then applied to the amount of recovery, less attorneys' fees and expenses to determine how much is repaid in reimbursement from the fund.

(2) the compensation received by the beneficiary from settlement with or judgment against a third party represents less than full compensation. Under such circumstances, the subrogation and reimbursement terms of the contract will be unenforceable.

### Conclusion

In this appeal, the Plan's managers, in their "sole discretion may permit the Plan Member to reimburse the Plan less than the full recovery amount received...." See note 1, p. 3. The Plan is apparently silent as to who may interpret its provisions with binding effect. Thus, we may review its terms de novo.

The cases cited above demonstrate that applying the Oklahoma make whole rule to this appeal does no violence to ERISA's preemption of state laws because it is identical to the federal common law applied by several federal courts in similar circumstances. Certainly, our decision contributes to no more "endless litigation over the validity of State action" feared by the Congress when it passed ERISA than do cases reaching the opposite conclusion. We therefore hold that the Plan is prohibited from sharing in the moneys the trial court ordered paid to Kim Youngblood because (1) the Plan fails to expressly state the priority for repayment of moneys; (2) the Plan's managers are not expressly vested with authority to bind Plan Members with their interpretation of ambiguous provisions of the Plan; and (3) the $40,000.00 paid to Kim Youngblood's mother, failed to fully compensate Kim Youngblood for her damages, which admittedly exceeded $150,000.00.

CERTIORARI PREVIOUSLY GRANTED, COURT OF APPEALS' OPINION VACATED, TRIAL COURT'S JUDGMENT AFFIRMED.

KAUGER, V.C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE and SUMMERS, JJ., concur.

WILSON, C.J. and OPALA, J., concur in part, dissent in part.