2000 OK CIV APP 127

**AMERICAN MEDICAL SECURITY,**
Plaintiff/Appellee,

v.

Carol JOSEPHSON, Defendant/Appellant.

No. 93,984.

Court of Civil Appeals of Oklahoma,
Division No. 2.

June 20, 2000.

Certiorari Denied Oct. 24, 2000.

Elizabeth R. Castleberry, James A. Scimeca, Murry J. Parrish, Miller Dollarhide, Oklahoma City, Oklahoma, for Appellant.

George W. Dahnke, Blake A. Bittel, Abowitz, Rhodes & Dahnke, P.C., Oklahoma City, Oklahoma, for Appellee.

*MEMORANDUM OPINION*

TAYLOR, Judge:

¶ 1 Defendant, Carol Josephson, appeals from the trial court's order granting sum-

mary judgment to Plaintiff, American Medical Security (AMS), in this action by an insurance company alleging its right of subrogation or reimbursement against settlement proceeds received by Defendant from a third-party tortfeasor. Based on our review of the record and the applicable law, we reverse and remand for further proceedings.

¶ 2 The record reflects AMS is the third-party administrator of a health insurance policy issued by United Wisconsin Life Insurance Company (UWLIC) to Josephson. AMS filed this action in October 1998, seeking reimbursement of $18,517.88 in medical expenses it had paid to health care providers on Josephson's behalf. Josephson had incurred those expenses, plus about $5,300 in other, additional medical costs, as a result of an injury she received to her leg while she was a passenger on an American Airlines flight.[1] In December 1996, she sued the airline for negligence, and alleges here that she initially valued her claim at $350,000.[2] In September 1998, prior to trial, Josephson entered into a settlement with the airline for $125,000 and dismissed her action with prejudice.

¶ 3 In April 1998, AMS had commenced an action against American for subrogation. At the same time that Josephson settled her suit, however, AMS signed a release of liability as to American and dismissed its subrogation claim against the company. Josephson placed the subrogated claim amount in escrow, to be released only by order of court or by agreement of the parties. Th , suit followed.

¶ 4 Both parties moved for summary judgment. The trial court granted AMS's motion. Josephson has appealed.

¶ 5 The appellate standard of review on a trial court's grant of summary judgment is well-established. Summary judgment is appropriate only if the record reveals uncontroverted material facts that fail to support any legitimate inference favoring the legal theory of the party against whom judgment was granted, and that one party is entitled to

judgment as a matter of law. The court must review the evidence presented, and must construe it in a light most favorable to the party opposing the motion. *First Nat'l Bank & Trust Co. of Vinita v. Kissee,* 1993 OK 96, 859 P.2d 502. Review of the trial court's judgment in such a case presents an issue of law, which we review pursuant to a de novo, or non-deferential, standard of review. *Kluver v. Weatherford Hosp. Auth.,* 1993 OK 85, 859 P.2d 1081.

¶ 6 The insurance contract between Josephson and UWLIC contains the following provisions:

### SUBROGATION

You [Josephson] agree that We [UWLIC] shall be subrogated to Your right to damages, to the extent of the benefits provided by the Policy, for Injury that a third party is liable for or causes.

You assign to us Your claim against a liable party to the extent of Our payments, and shall not prejudice Our subrogation rights. Entering into a settlement or compromise arrangement with a third party without Our prior written consent shall be deemed to prejudice Our rights. You shall promptly advise Us in writing whenever a claim against another party is made and shall further provide to Us such additional information as is reasonably requested by Us. You agree to fully cooperate in protecting Our rights against a third party.

### RIGHT OF REIMBURSEMENT

You may receive benefits under the Policy, and may also recover losses from another source, including Workers' Compensation, uninsured, underinsured, no-fault or personal injury protection coverages. The recovery may be in the form of a settlement, judgement, or other payment.

You must reimburse Us from these recoveries in an amount up to the benefits paid by Us under the Policy. We have an automatic lien on any recovery.

¶ 7 Josephson's first allegation of error in the trial court's order is that the subrogation

---

1. Josephson alleged she received third-degree burns to her right leg when she was given dry ice by a flight attendant to treat an unrelated injury.

2. American Airlines in defense contested the extent of Josephson's damages, as well as its own liability.

and reimbursement clauses in her health insurance contract are void and unenforceable because they are against the public policy of Oklahoma. Although, as discussed below, we agree there is a factual dispute that goes to the enforceability of these clauses under the circumstances presented, we reject Josephson's argument that such clauses are absolutely void as a matter of law.

¶ 8 In *Equity Fire & Casualty Co. v. Youngblood*, 1996 OK 123, 927 P.2d 572, the supreme court addressed the enforceability of subrogation and reimbursement clauses in health insurance policies under state law. The issue presented in *Youngblood*, as framed by the court, was whether a contractual subrogation or reimbursement provision in an employer's group medical insurance plan, which contained no "priority of payment" provision, was enforceable under Oklahoma law if the recipient of benefits under the policy had not yet been fully compensated, or "made whole," by settlement payments from a third party. The supreme court answered in the negative. It held the insurer could not share in the settlement proceeds because (1) the plan did not expressly delineate a priority for payment of such monies; (2) the plan's managers were not expressly vested with authority to bind plan members with their interpretation of ambiguous provisions of the plan; and (3) the proceeds paid to the insured failed to fully compensate her for her damages. *Id.* at ¶ 15, 927 P.2d at 576–77. The proceeds in question represented the policy limits tendered by two non-party insurance companies, and it was undisputed that the insured had not been fully compensated.

¶ 9 Unlike the situation in the case at bar, the insurance plan in *Youngblood* was governed by ERISA—the Employee Retirement Income Security Act—and the court clearly was concerned with possible ERISA preemption of state law. Here, Plaintiff admits for purposes of summary judgment that ERISA does not apply to the UWLIC policy. However, the court's opinion in *Youngblood* does not suggest the "make whole" rule is inconsistent with state law or that the court's analysis is limited *only* to insurance policies governed by ERISA. In fact, the court re-

fers to the "make whole" rule as "the Oklahoma make whole rule," and specifically notes that its application of the rule is not inconsistent with preemption. *Id.* at ¶ 17, 927 P.2d at 577. The court does not suggest that a health insurance contract's subrogation or reimbursement provision is invalid, unenforceable, or against public policy.

¶ 10 We recognize, as Josephson argues, there have been cases in which state appellate courts have refused to allow subrogation or set-off against an insured for the payment of medical expenses. We find the situations presented in the cases on which Josephson relies, however, are distinguishable.

¶ 11 In *Aetna Casualty & Surety Co. v. State Board for Property and Casualty Rates*, 1981 OK 153, 637 P.2d 1251, for example, the court affirmed the board's disapproval of proposed automobile liability policy provisions that would have allowed subrogation or set-off by an insurer against an insured for payments, to the insured, of benefits under the medical services coverage portion of the same policy. The court's decision in *Aetna* was governed by 36 O.S.1991 § 6092, an anti-subrogation statute that is specific to medical-payments provisions of automobile liability policies or endorsements. No similar statutory prohibition is present here.

¶ 12 Shortly after its decision in *Aetna*, the court in *Chambers v. Walker*, 1982 OK 128, 653 P.2d 931, deemed void a set-off clause in an uninsured motorist provision that allowed the insurer to reduce its own liability to its insured by amounts paid or owed to the insured under workers' compensation laws. As in *Aetna*, however, the court looked to state statutes to find legislative support for its decision. Construing 36 O.S.1991 § 3636 concerning statutory minimum UM coverage amounts, the court found the insurer's UM provision was a "subterfuge" to avoid statutory requirements. Suggesting the set-off provision was also inconsistent with § 6092, it refused to allow enforcement of the clause against the insurer's own insured. *Id.* at ¶ 9, 653 P.2d at 934.

¶ 13 Similarly, in *Bill Hodges Truck Co. v. Humphrey*, 1984 OK CIV APP 55, 704 P.2d 94, the court looked to 85 O.S.1981 § 45 in refusing a workers' compensation insurance

carrier's claim for set-off of a portion of a disability award to an injured worker in the amount recovered by the worker against his uninsured motorist coverage. The factual scenarios of *Aetna Casualty, Chambers,* and *Bill Hodges Truck* are not presented in the case at bar.

¶ 14 The authority from other jurisdictions on which Josephson relies is unpersuasive. Several of those cases are based on the rationale that subrogation clauses are void because they are essentially an illegal attempt to assign a personal injury cause of action. *See, e.g., Fifield Manor v. Finston,* 54 Cal.2d 632, 7 Cal.Rptr. 377, 354 P.2d 1073 (1960); *Allstate Ins. Co. v. Reitler,* 192 Mont. 351, 628 P.2d 667 (1981); *Maxwell v. Allstate Ins. Companies,* 102 Nev. 502, 728 P.2d 812 (1986); *Travelers Indemnity Co. v. Chumbley,* 394 S.W.2d 418 (Mo.App.1965). This view was expressly rejected by the Oklahoma Supreme Court, however, in *Aetna Casualty & Surety Co. v. Associates Transports, Inc.,* 1973 OK 62, 512 P.2d 137. The other cases on which Josephson relies either are not on point, or are based on statutory anti-subrogation provisions similar to those with which the Oklahoma cases were concerned. *See Peavey Co. v. M/V ANPA,* 971 F.2d 1168 (5th Cir.1992); *Rosato v. Karl Koch Erecting Co. Inc.,* 865 F.Supp. 104 (E.D.N.Y.1994).

■ ¶ 15 Even before the supreme court's decision in *Youngblood,* Oklahoma case law recognized an insurer's right to seek reimbursement from its insured of medical expenses paid when the parties' contract provided for it. *See State Farm Fire & Cas. Ins. Co. v. Farmers Ins. Exch.,* 1971 OK 120, 489 P.2d 480. Until *Youngblood,* however, the court had not addressed the extent to which an insured, who had been injured by a third-party tortfeasor, must recover from the tortfeasor before the insurance company's right to reimbursement arose. As noted above, *Youngblood* makes clear that, in the absence of a priority-of-payment provision, a reimbursement or subrogation clause will not be enforced against the insured until the proceeds paid by the tortfeasor (or other third party) fully compensate the insured.

■ ¶ 16 The reimbursement and subrogation provisions of the insurance contract between Josephson and UWLIC state simply that UWLIC has an "automatic lien" on Josephson's recovery. The clauses do not prescribe priority of payment of settlement proceeds received by Josephson, and the contract does not vest Plaintiff or UWLIC with authority to bind Josephson with their interpretation of ambiguous policy provisions. Thus, under the "make whole" rule, if Josephson has been fully compensated for her loss by the third-party tortfeasor, the reimbursement and subrogation provisions may be enforced against her. Until such time as she has been fully compensated, however, the reimbursement and subrogation provisions may not be enforced.

■ ¶ 17 The "make whole" rule has been described as prohibiting an insurer from recouping anything by way of subrogation or reimbursement until the insured "has been made entirely whole through recovery of all compensatory damages to which he is entitled." *Sunbeam–Oster Co., Inc. Group Benefits Plan v. Whitehurst,* 102 F.3d 1368, 1372 (5th Cir.1996). The trial court in the case at bar appears to have presumed that the settlement amount fully compensated Josephson. This is a conclusion that reasonably might follow from dicta in the court of civil appeals' opinion, *Young v. Columbia Southwestern Medical Center,* 1998 OK CIV APP 124, ¶ 7, 964 P.2d 987, 988–89, where Division 3 indicated, without holding, that settlement of a disputed claim effectively established the claim's value.[3] We disagree with the argument, however, that the settlement of a disputed claim means the injured party has been "made whole" as a matter of law.

■ ¶ 18 Whether a party has been fully compensated by proceeds derived from settlement with a third-party tortfeasor (or its insurance carrier) clearly presents a question of fact, inasmuch as compensatory damages may be comprised of several items in addition to the injured party's medical expenses, including pain and suffering, loss of wages, disability, and the like. In *Youngblood,* the

---

**3.** Ultimately the court in *Columbia* held that *Youngblood* did not apply because the apportion- ment of proceeds in the case before it was governed by statute, 63 O.S. Supp.1996 § 5051.1.

non-party insurance companies who were liable to the insured tendered their liability limits into court, and the parties agreed the limits were not sufficient to fully compensate the insured. Here, there was no evidence of the alleged tortfeasor's insurance liability limits. The record before the trial court included a copy of the release agreement between Josephson and American and a copy of her settlement conference statement from the personal injury action. The release does not delineate what items of damage it is intended to cover. The settlement statement, in addition to listing various inconveniences and problems that Josephson has had, indicates that she may require additional surgery. No evidence was submitted, or factual findings made, as to the dollar value of her actual damages.

¶ 19 Plaintiff argues that Josephson's settlement and release of her claim with the tortfeasor establishes she has been "fully compensated" or "made whole" as a matter of law. As noted by the Wisconsin Supreme Court in *Rimes v. State Farm Mutual Automobile Insurance Co.*, 106 Wis.2d 263, 316 N.W.2d 348, 354 (1982), in response to a similar argument by an insurance company/subrogor:

> We think this overstates the characteristics of a release and settlement of a claim, particularly in a personal-injury case, where both the questions of liability and of damages prior to trial are to some degree in doubt. A pre-trial release in settlement is in fact usually appropriate only when such doubts exist. A release is merely the giving up of a right of claim, and it may or may not be for full consideration and may or may not make the grantor of the release whole. Moreover, a settlement is defined in *Webster's Third New International Dictionary* as "the satisfaction of a claim by agreement often with less than full payment."

¶ 20 Though we find no Oklahoma Supreme Court decision directly on point, the court has recognized that a settlement amount does not necessarily represent an injured party's actual, or total, compensatory damages. *See Price v. Southwestern Bell Telephone Co.*, 1991 OK 50, 812 P.2d 1355.

We also note that, of the cases from other jurisdictions on which the supreme court relied in *Youngblood*, 1996 OK 123, 927 P.2d 572, the courts that also addressed this issue reached the same conclusion we reach here—that a settlement does not necessarily represent full compensation to the injured party. *See Sanders v. Scheideler*, 816 F.Supp. 1338, 1347 (W.D.Wis.1993), *affirmed without opinion* 25 F.3d 1053, 1994 WL 234497 (7th Cir. 1994) ("[T]he mere fact that the [insured parties] have executed a release ... does not mean that they have been fully compensated.... [A] trial is necessary to determine the extent of [their] damages."); *Schultz v. Nepco Employees Mut. Ben. Ass'n, Inc.*, 190 Wis.2d 742, 528 N.W.2d 441, 446 (App.1994) (evidentiary hearing needed to determine if insured's non-medical-expense damages exceeded the amount recovered from third-party tortfeasor's insurer).

¶ 21 When a party moves for summary judgment, the burden of producing admissible evidence to support every material fact is on the movant, and if such evidence has not been submitted as to each material fact the motion should be denied. *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, 743 P.2d 682 (approved for publication by the Oklahoma Supreme Court). The evidence before the trial court here was not sufficient to demonstrate that Josephson was fully compensated by her settlement with American. Rather, we find a material disputed fact remains as to whether she has been "made whole" so as to permit enforcement of Plaintiff's subrogation and reimbursement rights. The trial court's summary judgment in favor of Plaintiff therefore was in error. Its judgment is reversed, and this matter is remanded for an evidentiary hearing on this issue.

¶ 22 In her petition in error, Josephson has raised two other issues of error. One concerns the trial court's failure to assess a portion of attorney fees and costs against Plaintiff's recovery, and the other goes to whether Plaintiff is the proper party to bring this action. Neither of these issues was presented to the trial court for resolution prior to being raised here. Inasmuch as we now reverse the trial court's judgment for further

proceedings, the issues may be raised in the trial court on remand.

¶23 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

¶24 RAPP, P.J., and COLBERT, J., concur.