2006 OK CIV APP 140

**Theresa SOLLARS, Plaintiff/Appellee,**

v.

**HEALTHCARE RECOVERIES, Shelly Russell and Blue Advantage Administrators of Arkansas, Defendants/Appellants,**

and

**Integris Southwest Medical Center, Defendant.**

**No. 102,013.**

Court of Civil Appeals of Oklahoma, Division No. 3.

June 9, 2006.

Rehearing Denied July 12, 2006.

Certiorari Denied Oct. 23, 2006.

Michael W. Phillips, Ryan Bisher Ryan, Oklahoma City, OK, for Plaintiff/Appellee.

William Bergner, Nash, Cohenour & Kelley, P.C., Oklahoma City, OK, and Thomas H. Lawrence, John M. Russell, for Healthcare Recoveries Memphis, Tennessee, and Blue Advantage of Arkansas.

OPINION

ADAMS, Judge.

¶ 1 Healthcare Recoveries and Blue Advantage Administrators of Arkansas (collectively, Plan) appeal a trial court order holding that its recovery from funds received by Theresa Sollars should be reduced under the common fund doctrine to compensate her attorney and that her uninsured motorists insurance proceeds were not available as a source for reimbursement. Plan argues that the state law relied upon by Sollars is preempted and is inapplicable under the terms of her employee benefit plan. We agree. Insofar as the order allows reimbursement to Plan as an equitable remedy from funds interpled, the order is affirmed. However, by accepting benefits Sollars agreed to be bound by the terms of the employee benefit plan which made inapplicable certain state law relied upon in calculating Plan's reimbursement. The order applying the common fund doctrine, reducing reimbursement, and finding her uninsured motorist benefits unavailable as a source for reimbursement to Plan must be reversed, and the matter remanded for further proceedings.

¶ 2 Plan is a self-funded, employee welfare benefit plan covered by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA). Sollars had medical coverage with Plan as set forth in a 2004 Associate Guide Summary Plan Description (the Summary).

¶ 3 Sollars filed a Petition in Interpleader pursuant to 12 O.S.2001 § 2022, stating that she was injured in an automobile accident, had an offer to settle her claim against Shelly Russell for Russell's $10,000 policy limits, had an offer of $10,000 from her own uninsured motorist insurance carrier, had incurred medical bills in excess of $28,100, that Plan had a subrogation interest for $11,863.53 for benefits it had paid, and that she was still receiving treatment for her accident injuries. Sollars' petition states she is "ready and willing to distribute the balance of $10,000.00 after attorney fees and costs" but that she was "in doubt as to the amounts to be allocated amongst the various providers." She asked that the trial court "deter-

mine who is entitled to what amount of the $20,000.00." [1]

¶ 4 Subsequently, Sollars moved to extinguish liens, determine subrogation, and apportion settlement proceeds. She stated that her counsel was entitled to $8,000 under a forty percent attorney fee contract and that costs incurred in litigating her petition against Russell totaled $246.82. She argued that after subtracting attorney fees and costs from the settlement proceeds, the remaining sum was not sufficient to fairly compensate or make her whole, and that she knew of potential remaining medical expenses and bills in addition to Plan's request for subrogation for the $11,863.53 benefits it had paid. She states "[i]t is undisputed [Plan] policy of health insurance falls under **ERISA**." (Emphasis in original.)

¶ 5 Plan responded to Sollars' motion, arguing by accepting benefits Sollars agreed to "abide by" the provisions of the Summary. Under those provisions, it claimed, it was entitled to reimbursement, the "make whole" rule did not apply because the Summary expressly provided for priority of payment, the common fund doctrine did not apply, and that Sollars was required "to reimburse the Plan out of uninsured motorist proceeds." Plan moved for summary judgment in its favor.

¶ 6 The trial court granted summary judgment to Sollars and extinguished all liens overruling Integris' objections to lien extinguishment. The order determined that Sollars' uninsured motorist benefits were not subject to subrogation, and apportioned her third-party liability limits between Plan for its subrogation interest and her counsel for attorney fees and costs. This appeal followed.

■ ¶ 7 The parties do not argue that ERISA is inapplicable but rather differ in how they construe its provisions. Summary plan descriptions are part of the ERISA plan documents and must be considered when interpreting a benefit plan. 29 U.S.C. § 1022(a)(1); *Chiles v. Ceridian Corporation*, 95 F.3d 1505 (10th Cir.1996); *Kemmerer v.*

*ICI Americas Inc.*, 70 F.3d 281, (3rd Cir. 1995), *cert. denied*, 517 U.S. 1209, 116 S.Ct. 1826, 134 L.Ed.2d 931 (1996). A plan's summary "best reflects the expectations of the parties" and controls the terms of the plan itself. *Chiles*, 95 F.3d at 1515.

¶ 8 Sollars argues that Plan may not maintain an interest in the settlement proceeds because it is limited to "appropriate equitable relief" under ERISA. 29 U.S.C. § 1132(a)(3). Citing *Great West Life & Annuity Insurance Company v. Knudson*, 534 U.S. 204, 210, 122 S.Ct. 708, 713, 151 L.Ed.2d 635 (2002), she argues that Plan is seeking relief not available to it under ERISA, because it seeks contractual reimbursement, a legal remedy, and that its claim for reimbursement is nothing more than an effort to enforce "a contractual provision to pay money—relief that was not typically available in equity." In *Knudson*, the Court noted that this is so because a claim for money under a contract was "quintessentially an action at law." 534 U.S. at 210, 122 S.Ct. at 713 (citing *Wal–Mart Stores, Incorporated Associates' Health and Welfare Plan v. Wells*, 213 F.3d 398, 401 (7th Cir.2000), *cert. denied*, 531 U.S. 985, 121 S.Ct. 441, 148 L.Ed.2d 447(2000)). Sollars argues that an enforcement of a contractual obligation to pay money is a legal remedy not available under ERISA.

¶ 9 It is not enough to argue that Plan's claim for reimbursement is a claim for money. The quoted language from *Knudson* is part of a more thorough analysis, and a benefit plan is not foreclosed from enforcing its terms merely because the remedy will result in the receipt of money. Determining the nature of the relief requires a more precise analysis. Further, the relationship of these parties arises from the substantive provisions of the Summary, an agreement controlled by ERISA, and analysis of this matter requires both consideration of the underlying basis for relief and of the terms of that agreement.

■ ¶ 10 We must, therefore, determine if the relief Plan seeks is equitable in nature.

---

1. The trial court docket shows that her attorney tendered $10,000 to the district court on September 9, 2004. The district court docket notes the receipt of only one $10,000 payment.

Like in *Administrative Committee of the Wal–Mart Associates Health and Welfare Plan v. Willard*, 302 F.Supp.2d 1267 (D.Kan. 2004) *(Willard I), aff'd*, 393 F.3d 1119 (10th Cir.2004) *(Willard II)*,[2] funds have been paid into the court and a claim against them may be asserted without imposing a personal liability on Sollars. "The Plan seeks *in rem* relief against the proceeds in the Court's possession, not a legal remedy of general liability." *Willard I*, 302 F.Supp.2d at 1276. As recognized in *Knudson*, restitution in equity in the form of a constructive trust or an equitable lien may be recovered from an identifiable or traceable fund when money or property in the possession of one party is "identified as belonging in good conscience" to another. 534 U.S. at 213, 122 S.Ct. at 714. In such circumstances, the remedy sought by the Plan is equitable in nature.[3]

■ ¶ 11 Here, Sollars received funds and sought, *via* interpleader, to determine the proper respective rights of various competing claimants to those funds. "It is recognized that the right of interpleader is an equitable remedy. 48 C.J.S., Interpleader, § 2, and cases cited. And, where the request for interpleader is approved the questions to be considered are equitable in nature." *Welch v. Montgomery*, 1949 OK 80, ¶ 11, 205 P.2d 288, 290.

■ ¶ 12 The relief sought by Plan is appropriate equitable relief under § 1132(a)(3) because it does not seek to impose personal liability upon Sollars but to reach identifiable funds under her control. Sollars herself also seeks equitable relief *via* interpleader. The relief requested by Plan is available to it under ERISA and is available in Sollars' interpleader proceeding, and to the extent the order allows an equitable remedy against the interpled funds, the order is affirmed.

■ ¶ 13 A court will examine ERISA plan documents as a whole and, if unambiguous, construe them as a matter of law. *Chiles v. Ceridian Corporation*, 95 F.3d 1505, 1511 (10th Cir.1996). This approach is consistent with Oklahoma statutory law which provides that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." 15 O.S.2001 § 157. Ambiguity exists if a provision is reasonably susceptible of more than one meaning or its meaning is uncertain. *Willard I*, 302 F.Supp.2d at 1279. The language of a plan must be given its common and ordinary meaning, *Willard II*, 393 F.3d at 1123, because it "best reflects the expectations of the parties." *Ceridian*, 95 F.3d at 1515.

¶ 14 Plan argues that "ERISA preempts any state law relied upon by Sollars to reduce the Plan's reimbursement interest where such state law conflicts with [the Summary] terms." Sollars argues that Plan should not receive reimbursement because she has not been made whole by the funds she received, citing *Equity Fire and Casualty Company v. Youngblood*, 1996 OK 123, 927 P.2d 572. *Youngblood* recognized that the "make whole rule" applies when two conditions are met: first, the "contract neither expressly sets priorities for the repayment of benefits, nor otherwise gives a right to subrogation or reimbursement before any funds are paid to the beneficiary" and second, that a "settlement or judgment against a third party represents less than full compensation." 1996 OK 123 ¶ 15, 927 P.2d at 576–577. The first condition is lacking here.

■ ¶ 15 The Summary specifically provides that Plan "has first priority with respect to its right to reduction, reimbursement, and subrogation" and also states:

The Plan's right to reimbursement applies when the Plan pays medical benefits, and a

---

2. *Willard II* held that a plan administrator's suit for restitution was "appropriate equitable relief" under ERISA, 393 F.3d at 1126, and affirmed the decision of the federal district court in *Willard I* so finding. Based upon language in the plan, *Willard I* awarded an equitable lien for full reimbursement without any deduction for attorney fees and costs of the underlying action out of the funds paid into court.

3. We are aware that the federal circuits have, since *Knudson*, disagreed about whether a request for reimbursement is equitable or legal, and that a minority takes the view that reimbursement claims are actions at law, *see, e.g. Qualchoice, Inc. v. Rowland*, 367 F.3d 638 (6th Cir.2004), *cert. denied*, 544 U.S. 942, 125 S.Ct. 1639, 161 L.Ed.2d 510 (2005). We decline to adopt their analysis.

judgment, payment or settlement is made on behalf of the covered person for whom the medical benefits were paid. Reimbursement to the Plan of *100 percent* of these charges shall be made *at the time the payment is received* by you, your attorney, or other person on your behalf. (Emphasis added.)

Most importantly, the Summary provides that Plan's rights apply regardless of whether a payment was designated as for pain and suffering, medical benefits, any other special damages, or *"whether the participant has been made whole (that is, fully compensated for his or her injuries)."* (Emphasis added.)

¶ 16 As recognized in *Fields v. Farmers Insurance Company, Inc.*, 18 F.3d 831 (10th Cir.1994), parties are free to modify general common law principles such as those embodied in the "made whole rule" which would apply *absent express contractual provisions to the contrary.* Here, there are such express provisions, and the rule does not apply to reduce Plan's reimbursement.

¶ 17 Similarly, the application of a federal common law "make whole rule" in *Great–West Life Annuity Insurance Company v. Clingenpeel*, 996 F.Supp. 1353 (W.D.Okla. 1997), does not require a different result. The *Clingenpeel* Court recognized that the rule is "default doctrine" applied when subrogation clauses "do not specifically state whether the company's reimbursement is subject to the insured's first being made whole." 996 F.Supp. at 1356. The *Clingenpeel* Court, after noting the criteria for applying the "make whole rule" in *Youngblood,* found that the provisions in that matter precluded application of the rule. As there, the Summary is not silent on this issue.

¶ 18 The "make whole rule" does not stand as an impediment to Plan's reimbursement

because these parties have explicitly agreed in the Summary that Sollars' failure to be "made whole" does not affect the amount of Plan's reimbursement. Sollars' arguments must be rejected, and the provisions of the Summary must be given effect. Under the facts presented, the "make whole rule" is inapplicable.

¶ 19 Plan also argues the trial court erred in applying the common fund doctrine to impose upon it liability for a portion of Sollars' attorney fees and costs because the Summary contains provisions specifically requiring plan participants to pay their own attorney fees and costs and disclaiming this doctrine. The Summary for Sollars' coverage does indeed specifically state that "[t]he Plan does not pay for nor is responsible for the covered person's attorney's fees, expenses or costs," and further advises that "[t]he Plan is not subject to any state law doctrines, including but not limited to the common fund doctrine, which would purport to require the Plan to reduce its recovery by any portion of a covered person's attorney's fees, and costs."

¶ 20 Like the "make whole rule," the common fund doctrine is a common law doctrine recognized as an exercise of a court's equitable jurisdiction, and its benefits are amenable to an explicit rejection by the parties. That explicit rejection has occurred here. Based upon the plain language of the Summary, the reimbursement to Plan should not be reduced by any attorney fees or costs incurred by Sollars. *See Willard I,* 302 F.Supp.2d at 1285. The provisions of the order allowing for payment of Sollars' attorney fees and costs out of the interpled funds must be reversed.[4]

¶ 21 Plan argues the trial court erred in concluding that the proceeds from

---

4. *Clingenpeel* also considered the common fund rule, but the Court's opinion makes no note of any plan provisions specifically addressing attorney fees and costs. Consequently, its application of the common fund rule is not helpful to analysis when such specific and explicit provisions exist, and we decline to find otherwise. *See Health Cost Controls v. Isbell,* 139 F.3d 1070 (6th Cir.1997) (wherein the court found that application of a common fund doctrine would undermine plan provisions requiring full reimbursement for medical benefits and that the plaintiff in

that matter had failed to show how such an application advanced the explicit statutory purpose of ERISA, namely to ensure the integrity and primacy of the written plans); *cf. Wal–Mart Stores, Incorporated Associates' Health and Welfare Plan v. Wells,* 213 F.3d 398 (7th Cir.2000), *cert. denied,* 531 U.S. 985, 121 S.Ct. 441, 148 L.Ed.2d 447 (2000) (noting that contracts are written against a common sense background of understandings and legal principles, and apply-

Sollars' "underinsured motorist benefits are not subject to subrogation" because the Summary terms specifically require her to make reimbursement out of such proceeds. We agree that under the terms of the Summary those proceeds were not exempted as a source of reimbursement to Plan. Unlike the policy in *Provident Life & Accident Insurance Co. v. Ridenour*, 1992 OK CIV APP 93, ¶ 4, 838 P.2d 530, 531, where the right to repayment was set forth in a medical plan provision entitled "Acts of Third Parties" which conflicted with another provision calling for repayment, the Summary contains a broad provision specifically referencing "uninsured/underinsured motorist coverage" as a source of reimbursement and there is no limiting conflicting provision. That provision must be given its plain and ordinary effect.

¶ 22 By accepting the benefits of the Plan, Sollars agreed to be bound by the terms set forth in the Summary. Funds she received in settlement from her underinsured motorist coverage and from Shelley Russell rightfully were payable to Plan to reimburse it, without deduction for attorney fees or costs, to the extent it had paid medical benefits for damages caused by Russell.

¶ 23 Insofar as the order allows the appropriate equitable remedy of reimbursement to Plan, the order is affirmed. However, as to the apportionment reducing the amount awarded Plan for reimbursement, allowing for the payment of attorney fees from the interpled funds, and disallowing any reimbursement from the funds paid by Sollars'

uninsured motorist carrier, the order must be reversed. Sollars agreed to provide Plan first priority to recovered funds, and Plan shall be reimbursed accordingly out of the interpled funds.

¶ 24 However, the record does not indicate the precise amount of funds which were paid into court as part of the interpleader.[5] If all of the funds received from Russell and from Sollars' uninsured motorist carrier were paid into court, then upon remand, the trial court shall order Plan reimbursed in full. If, on the other hand, some of the funds were not paid into court as part of the interpleader, the trial court on remand must determine whether the portion not paid into court remains as a traceable, identifiable fund in the control of Sollars or her attorney. If such a fund exists, it is a source for equitable restitution to Plan.

¶ 25 If not, ERISA would not allow Plan to pursue a claim against the settlement proceeds not paid into court, at least in *federal court*.[6] Under those circumstances, the trial court must determine whether Plan still has a *legal* claim in state court for reimbursement from Sollars. In other words, the trial court must determine whether, despite ERISA, Plan may pursue *in state court*, a breach of contract claim against Sollars, an issue explicitly left undecided by *Knudson*.[7] In any event, summary judgment was not appropriate.

¶ 26 The trial court's order is affirmed insofar as it allowed Plan reimbursement

ing equitable common fund principle in the absence of plan provision expressly repudiating it).

5. The petition references $20,000 and the trial court's order covers that amount. However, the docket sheet only reflects the deposit of $10,000 with the court clerk by Sollars' attorney.

6. As to insurance proceeds which were not paid into court and which are no longer an identifiable fund in the control of Sollars or her attorney, Plan holds a reimbursement claim which is "only that of a general creditor" and the relief would entail a legal remedy—personal liability to pay a sum of money—falling outside the relief allowable under ERISA. *Knudson*, 534 U.S. at 213, 122 S.Ct. at 714; *Accord Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough*, 354 F.3d 348 (5th Cir. 2003) *cert. denied, Ferrer, Poirot and Wansbrough v. Bombardier Aerospace Employee Welfare Benefits Plan*, 541 U.S. 1072, 124 S.Ct. 2412, 158

L.Ed.2d 981 (2004) (Constructive trust allowed for identifiable settlement funds held in attorney trust account in suit seeking reimbursement of medical benefits paid following an automobile accident) and *Administrative Committee of the Wal–Mart Stores, Inc. Associates' Health and Welfare Plan v. Varco*, 338 F.3d 680 (7th Cir.2003), *cert. denied*, 542 U.S. 945, 124 S.Ct. 2904, 159 L.Ed.2d 828 (2004) (Reimbursement held appropriate equitable remedy where participant had control over funds held by attorney, funds were identifiable and had not been dissipated, and funds belonged in good conscience to a plan; state common fund doctrine did not apply where plan specifically provided participant was responsible for attorney fees).

7. We decline to address that issue in this appeal because the trial court did not resolve that issue, and the uncertainty of this record makes it possible, perhaps even likely, that the issue will not have to be decided.

from the interpled funds. However, the order is reversed insofar as it reduced Plan's reimbursement by taking into account the fact that Sollars had not been "made whole" by the payment of the interpled funds and Sollars' attorney fees. In addition, the trial court erred in ruling out any reimbursement from uninsured motorist proceeds on this record, and the order is reversed in that respect as well. The case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

MITCHELL, P.J., and BUETTNER, C.J., concur.